# United States Court of Appeals for the Federal Circuit

---

**NATHAN KING,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI,** SECRETARY OF VETERANS AFFAIRS,
*Respondent-Appellee.*

---

2011-7159

---

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 09-4533, Judge Ronald M. Holdaway.

---

Decided: December 5, 2012

---

MICHAEL LAWRENCE VARON, of White Plains, New York, argued for claimant-appellant.

MICHAEL D. AUSTIN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director. Of counsel on the brief were DAVID J. BARRANS, Deputy

Assistant General Counsel, and AMANDA R. BLACKMON, Attorney, United States Department of Veterans Affairs.

_____

Before RADER, *Chief Judge*, O'MALLEY, and WALLACH, *Circuit Judges*.  Dissenting opinion filed by *Circuit Judge* O'MALLEY.

RADER, *Chief Judge*.

The United States Court of Appeals for Veterans Claims affirmed the decision of the Board of Veterans Appeals affirming the denial of Nathan King's claim for compensation benefits for his back and bilateral hip conditions.  On appeal to this court, Mr. King contends that the Veterans Court erred by discounting lay testimony offered by Mr. King and his wife.  Because, as a preliminary matter, the Veterans Court did not fail to consider Mr. King's proffered lay evidence, this court lacks jurisdiction over Mr. King's contention, which is merely a challenge to the weight given his evidence.

I

A Department of Veterans Affairs ("VA") regional office awarded Mr. King disability compensation for residuals of a left knee surgery and right knee arthritis.  Mr. King later sought disability compensation for disabilities of the back and hips on a direct basis and as secondary to his service-connected knee disabilities.  In support of his claim, Mr. King stated that he developed disabilities of the back and hips as a result of falls and movement adjustments attributed to his service-connected knee disabilities.

Mr. King testified before the Board during a December 2, 1998 hearing.  Mr. King described continuing problems with his left knee, including incidents of insta-

bility beginning "a couple of months after the service." A13. He further described the onset of his back pain, ongoing symptoms, discussions with VA physical therapists, and the results of an MRI on his back. Mr. King also described his abnormal gait and its effect on his body. He explained that, "[b]ecause my knees hurt and because my back has a tendency, if I don't walk right, to get loud with me, I would put more weight on each hip as I walk. I kind of overcompensate because I don't want to have the pain there." A16.

In support of Mr. King's claim, on November 30, 1998, Mr. King's wife also presented a two-page letter to the VA. In her statement, which was included in the hearing, Mrs. King explained that she was not a medically trained professional; however, as a school teacher, she was keenly aware of behavioral changes from her experience observing and recognizing changes in students' performance, physical well-being, and attitude toward assigned tasks. Mrs. King explained that, after living with Mr. King for twenty years, ". . . I have watch[ed] [Mr. King's] physical abilities deteriorate over the years, mainly because of his knees, back and hips." A8. She further described Mr. King's progressive decrease in ability to do home repairs and that his general activity was increasingly limited. Mrs. King also opined that Mr. King's back and hip problems were caused by his knee injuries. A8–9.

The record in this case shows, however, that medical professionals were skeptical about the relationship between his knee injury and his back and hip conditions. Service medical records revealed no treatment for back or hip problems during Mr. King's active duty service from February 1973 to June 1974. Post-service medical records indicate that x-rays of the hips, in 1996, revealed bilateral well-corticated ossific densities of the hips, which were most likely osteophytes. A 1996 MRI of the lumbar spine

revealed mild disc desiccation with central posterior disc herniation at the L4-L5 disc level, and mild disc desiccation with symmetrical disc bulge at the L3-L4 level. A 1997 MRI of the hips revealed mild degenerative arthritis bilaterally, with no evidence of avascular necrosis. Mr. King was diagnosed with herniated nucleus pulposus of L4-L5 with multiple disk bulges of the lumbosacral spine and degenerative joint disease of both hips in 1997.

Mr. King underwent a VA spine examination in 2000. The examiner diagnosed Mr. King's minimal degenerative joint disease of both hips and lumbosacral spine. The examiner related Mr. King's conditions to his age. He explained that Mr. King's knee injury, specifically his left postoperative anterior cruciate ligament reconstructive condition of the knee, was not the type of injury that causes the back and hip problems Mr. King experienced. He also noted that Mr. King had symptomatology referable to a chronic pain syndrome with possible psychosomatic overlays. A VA medical examiner's subsequent examination in 2003 did not further opine on the etiology of Mr. King's back and hip conditions.

A private medical physician, Dr. Dashiff, disagreed that Mr. King's hip and back conditions were age-related. In a 2000 letter, he opined that Mr. King's knee problems caused the hip and lower back problems. Dr. Dashiff opined that he reached this conclusion in the absence of any defined trauma or occupational hazard to account for those other problems. Dr. Dashiff further stated that studies had made clear the significant effect of weight bearing on the lumbar spine. He noted that Mr. King's 1997 MRI revealed only mild desiccation, which strongly suggested that injuries to Mr. King's back were not of longstanding duration, but were recent. Dr. Dashiff offered the opinion that, because only mild arthritic changes were revealed in Mr. King's hips, and because the

hip joints are between the knee and lumbar spine, Mr. King's hips were subjected to abnormal forces that resulted from his knee injuries and subsequent off-loading to ameliorate knee symptoms.

In a 2006 report, the VA Chief of Orthopedics again reported on examinations he conducted in 2000 and 2003. Regarding the 2000 examination, the examiner noted an absence of important bridging symptoms in Mr. King's back, linking such findings to aging processes rather than to his bilateral knee condition. Regarding Mr. King's hip condition, the VA examiner reported during a 2003 examination that only very minimal degenerative arthritis was revealed, which he stated, was age-related and substantiated by few abnormal findings. The examiner thus concluded that Mr. King's bilateral hip and back disabilities were not related to his bilateral service-connected knee conditions.

In 2007, the Board denied Mr. King's appeal. He appealed that determination to the Veterans Court. The parties filed a joint motion for remand, which the court granted. On remand, additional evidence was developed and associated with the record.

In 2008, the Board obtained a medical opinion from a Veterans Hospital Administration (VHA) orthopedist.[1] Based on his review of the record, the VHA examiner opined that it was not likely that Mr. King's back and bilateral hip disabilities were either directly caused or permanently worsened as a consequence of the service-connected knee disabilities. The VHA examiner concluded that the mild symmetrical changes in Mr. King's

---

[1] In its opinion, the Veterans Court refers to this as an opinion from an independent medical examiner (IME). For consistency, we refer to it as the opinion of the VHA examiner.

hips reflected expected changes from the aging process. The VHA examiner explained that, in order for the hip condition to be associated with the knee condition, it would have to have occurred in a progressive and persistent manner from his period of service, rather than beginning twenty years after his service. Regarding Mr. King's back condition, the VHA examiner noted Mr. King's multiple level (L4-L5 and L3-L4) spine desiccation, as revealed in the 1996 MRI, reflected the effects of aging rather than load transfer from an adjacent limb or joint. The VHA examiner stated that the record contained no evidence for the permanent worsening of Mr. King's back or hip conditions.

In 2009, Mr. King submitted a 2004 treatise article, which addressed the question of a relationship between limping and back symptoms, noting that a limp can in some specific instances cause back pain and aggravate preexisting back pain.

In 2009, the Board denied Mr. King's appeal. In its analysis of the record, the Board determined that this case presented conflicting medical opinion evidence, and, consequently, that it was required to determine the relative probative value and weight to be accorded these opinions. The Board then reviewed case law applicable to its review of the medical opinion evidence.

The Board first considered the favorable medical opinion of Dr. Dashiff, but concluded that his opinion was of limited probative value. The Board found that the basis for Dr. Dashiff's opinion was unclear because it was not apparent that Dr. Dashiff proffered his opinion based upon a review of either the claims file or other records in the file. The Board, moreover, noted that Dr. Dashiff did not indicate that his opinion was based on any period of prior treatment or other opportunity during which he

evaluated Mr. King's claimed back and hip disabilities. The Board also noted that Mr. King's treatment records dated before 2000 were from VA examiners and included no records from Dr. Dashiff. The Board concluded that Dr. Dashiff's opinion was not based upon a review of the claims file or upon a course of treatment by which he could have become familiar with Mr. King's claim.

The Board further determined the treatise article submitted by Mr. King was of extremely low probative value because, although the article generally addressed questions on the relationship between limping and back symptoms, the article did not address matters specific to Mr. King's case.

With respect to the VA medical opinion evidence, the Board found VHA examiner's opinion provided a clear rationale for his conclusions, which were based upon a review of the claims file with citation to specific medical records. The VHA examiner's opinion identified three significant findings in support of its conclusion: the absence of any record of treatment for the claimed disabilities between 1974 and 1995, the symmetrical changes revealed in the hips, and the locations of the disc changes in the spine. The Board concluded this opinion was of high probative value because it had no deficiencies and was comparatively more complete than Dr. Dashiff's opinion.

The Board then considered the lay testimony offered by Mr. King and his wife. The Board found Mr. King generally asserted that he developed back and hip disabilities from falls and movement adjustments that were a result of his service-connected knee disabilities. The board further found Mrs. King's statement provided similar contentions. The Board concluded the Kings' lay statements were not competent on the question of medical

causation because they lacked the medical training and expertise required to render an opinion on medical causation.

The Board ultimately concluded that, on balance, the evidence of record did not establish an etiological link between Mr. King's low back and hip disorders and his period of service. The Board further concluded that the evidence did not establish the claimed back and hip disorders were shown to be secondary to Mr. King's service-connected disabilities. The Board, accordingly, denied Mr. King's claim.

Mr. King appealed to the Veterans Court. Regarding the Kings' lay testimony, the Veterans Court believed the Board's treatment was within its role as the fact finder. While the Veterans Court acknowledged that lay evidence may be used to establish medical causation, the court observed the Board is not required "to accept all lay statements as definitive proof of a service-connection claim . . . ." The Veterans Court concluded that the Board properly "considered [Mr. King's] lay evidence but found that it was outweighed by the competent medical evidence of record . . . ." Mr. King appeals that holding.

## II

The governing statute, regulation, and our precedent make clear that competent lay evidence may be used to establish a medical condition, including causation. The governing statute provides as follows:

> The Secretary shall consider all information and *lay and medical evidence* of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the deter-

mination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

38 U.S.C. § 5107(b) (emphases added). The applicable regulation provides that "[t]he factual basis [for establishing a chronic disease] may be established by medical evidence, *competent lay evidence* or both. . . . Lay evidence should describe the material and relevant facts as to the veteran's disability observed within such period, not merely conclusions based upon opinion." 38 C.F.R. § 3.307(b) (emphases added). Consistent with the statute and regulation, this court has stated that "lay evidence is one type of evidence that must be considered" and that "competent lay evidence can be sufficient in and of itself." *Buchanan v. Nicholson*, 451 F.3d 1331, 1335 (Fed. Cir. 2006). In the same regard, this court has noted that the Board's failure to consider competent lay evidence is "a legally untenable interpretation of the . . . [governing] statutory and regulatory provisions . . . ." *Id.* at 1336.

*Jandreau v. Nicholson* followed *Buchanan* by reversing the Veterans Court for applying the overbroad rule that "competent medical evidence is required . . . [when] the determinative issue involves either medical etiology or a medical diagnosis." 492 F.3d 1372, 1376 (Fed. Cir. 2007) (quotation marks and citation omitted). This court noted that the Veterans Court's holding was "inconsistent with our decision in *Buchanan* . . ., which was decided shortly before the decision of the Veterans' Court in this case." *Id.* In *Davidson v. Shinseki*, this court again stresses its consistent holdings that lay evidence may be sufficient to establish a diagnosis of a medical condition and its explicit rejection of the Veterans Court's contrary view in *Buchanan* and *Jandreau*. 581 F.3d 1313, 1316 (Fed. Cir. 2009). Nevertheless, "[i]gnoring [*Buchanan* and *Jandreau*], the Veterans Court in this case stated categorically that a valid medical opinion was required to

establish nexus, and that [the claimant] was not competent to provide testimony as to nexus because she was a layperson." *Id.* This court, accordingly, reversed the Veterans Court in *Davidson*.

In this case, the Board's opinion stated:

> The only other evidence of record supporting the Veteran's claim is his own opinion, as indicated in his October 2004 Travel Board hearing testimony, and that of his spouse, contained in a statement received in December 1998, with similar contentions. *Neither individual, however, has been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation. Accordingly, this lay evidence does not constitute competent medical evidence and lacks probative value.*

A40 (emphasis added). It is presumed the Board's decision was based on the entire record. *See Gonzales v. West*, 218 F.3d 1378, 1380–81 (Fed. Cir. 2000). The Board seemed to place emphasis on the statutory requirement that lay evidence demonstrate some "competence."

The Veterans Court agreed with the Board that "the probative value of [the November 2008 VHA] opinion is very high" and King's evidence "lacks probative value." A5–6, 40. Specifically addressing Mrs. King's lay testimony, the Veterans Court noted that nothing in the record demonstrated that Mrs. King received any special training or acquired any medical expertise in evaluating and determining causal connections for conditions such as Mr. King's bilateral hip and back conditions. Accordingly, the Veterans Court did not find error in the Board's statement that neither Mr. King nor his wife had "the requisite medical training, expertise, or credentials

needed to render a diagnosis" thus their testimony "could not establish medical causation" nor was it "a competent opinion as to medical causation." A40. Citing this court's precedent in *Davidson v. Shinseki*, 581 F.3d 1313 (Fed. Cir. 2009) and *Jandreau v. Nicholson*, 492 F.3d 1372 (Fed. Cir. 2007), the Veterans Court reasoned "[t]he Board is not required to accept all lay statements as definitive proof of a service-connection claim, however, and nothing in *Davidson* precludes the Board from favoring competent medical evidence over the lay statements offered by a veteran." A6. Thus, the Veterans Court determined the Board did not improperly discount lay evidence; instead, it simply found the expert's testimony more probative.

## III

This court notes that this case is different from previous decisions reversed by this court. In this case, neither the Board nor the Veterans Court deemed lay evidence categorically incompetent. *See Davidson*, 581 F.3d at 1316; *Buchanan*, 451 F.3d at 1337. Moreover, neither forum improperly required a medical opinion as the sole way to prove causation. *Id.* Although citing case law that has been overturned by this court's precedent, the Board did not make the unqualified determinations present in the above overturned cases. Moreover, the Veteran's Court reassessed the evidence and found as well that the Board did not err in its procedure or result.

The Veterans Court correctly evaluated the Board's credibility assessment, weighing of evidence, and treatment of Mrs. King's testimony and did not find clear error. The Veterans Court did not ignore the precedent of *Jandreau* and did not categorically dismiss Mr. King's lay evidence. Rather, the Veterans Court addressed the Board's reliance on the VHA examiner's opinion over Mr.

King's other medical evidence.  The Veterans Court determined the Board did not err by favoring the opinion of one competent medical expert over that of another and found the Board's reliance was justified.  In reaching its conclusion, the Veterans Court gave due consideration to Mr. King and Mrs. King's testimony, and did not deem them incompetent merely because they were laypersons. Accordingly, the Veterans Court did not err in its determination.

## IV

Our jurisdiction to review Veterans Court decisions is defined by 38 U.S.C. § 7292.  This court has exclusive jurisdiction to interpret statutory provisions and reviews the Veterans Court's statutory interpretations without deference.  38 U.S.C. § 7292(c); *Cook v. Principi*, 353 F.3d 937, 938 (Fed. Cir. 2003).  Absent a constitutional issue, this court is precluded from reviewing challenges to factual determinations or challenges to an application of law to fact.  38 U.S.C. § 7292(d)(2) ("Except to the extent that an appeal under this chapter presents a constitutional issue, the Court of Appeals may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case."); *Cook*, 353 F.3d at 938–39.  Although this Court has jurisdiction to review a "rule of law," including a rule established by a judicial precedent of the Veterans Court, it may not review the application of law to the facts of a particular case.  *See Willsey v. Peake*, 535 F.3d 1368, 1371–72 (Fed. Cir. 2008); *see also Bastien v. Shinseki*, 599 F.3d 1301, 1306 (Fed. Cir. 2010) ("The evaluation and weighing of evidence and the drawing of appropriate inferences from it are factual determinations committed to the discretion of the fact-finder.  We lack jurisdiction to review these determinations.").

The Veterans Court addressed Mr. King's contentions that his lay evidence was mistreated. In its evaluation, as described above, the Veterans Court did not misinterpret the applicable statutes or case law. On appeal, Mr. King's arguments fail on their merit and likewise fail to provide a jurisdictional basis. This court is precluded from reviewing Mr. King's contentions because they involve a review of the application of law to fact. Because Mr. King only challenges the evaluation and weighing of evidence, this court lacks jurisdiction over this appeal.

## DISMISSED

### COSTS

Each party shall bear its own costs.

# United States Court of Appeals
# for the Federal Circuit

―――――――――――

**NATHAN KING,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI,** Secretary of Veterans Affairs**,**
*Respondent-Appellee.*

―――――――――――

2011-7159

―――――――――――

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 09-4533, Judge Ronald M. Holdaway.

―――――――――――

O'MALLEY, *Circuit Judge*, dissenting.

I dissent from the Court's judgment because I find the rationale used to justify it both unsupported by the record and inconsistent with this Court's binding case law. While the majority strains to characterize the findings of the Veterans Court and those of the Board before it as consistent with 38 U.S.C. § 5107(b) and our case law interpreting that mandate, the majority's efforts fail. Though it tries mightily, the majority cannot rewrite the decisions below.

I

The Board was wrong to conclude that the Kings' lay testimony was neither competent nor probative of the

question of medical causation. The Veterans Court was wrong to affirm the Board's treatment of that evidence.

As the majority concedes, "[t]he governing statute, regulation, and our precedent make clear that competent lay evidence may be used to establish a medical condition, including causation." Majority at 8. We consistently have made clear that "lay evidence is one type of evidence that must be considered" and that "competent lay evidence *can be sufficient in and of itself,*" to prove medical causation. *Buchanan v. Nicholson,* 451 F.3d 1331, 1335 (Fed. Cir. 2006) (emphasis added). We also have held that the Board's failure to consider competent lay evidence is "a legally untenable interpretation of the . . . [governing] statutory and regulatory provisions . . . ." *Id.* at 1336.

Notwithstanding the clear directive set forth in the statute, regulation, and our holding in *Buchanan*, we repeatedly have had to reverse the Veterans Court for endorsing the Board's failure to even consider competent lay evidence when considering medical causation. In *Jandreau v. Nicholson*, we reversed the Veterans Court because it held that "competent medical evidence is required . . . [when] the determinative issue involves either medical etiology or a medical diagnosis." 492 F.3d 1372, 1374 (Fed. Cir. 2007) (quotation marks and citation omitted). We pointed out that this holding was untenable under and "inconsistent with our decision in *Buchanan . . .*" *Id.* at 1376. In *Davidson v. Shinseki*, we once more emphasized that lay evidence may be sufficient to establish a diagnosis of a medical condition and reemphasized our explicit rejection of the Veterans Court's contrary view in *Buchanan* and *Jandreau.* 581 F.3d 1313, 1316 (Fed. Cir. 2009). As the majority concedes, we were again forced to reverse the Veterans Court in *Davidson*.

Here, the Veterans Court and the Board persist in their disregard of the governing law. In its opinion, the Board states:

> The only other evidence of record supporting the Veteran's claim is his own opinion, as indicated in his October 2004 Travel Board hearing testimony, and that of his spouse, contained in a statement received in December 1998, with similar contentions. *Neither individual, however, has been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation. Accordingly, this lay evidence does not constitute competent medical evidence and lacks probative value.*

*In re King*, No. 98-08 643A (Bd. Vet. App. Feb. 27, 2009) (emphasis added). It is difficult to understand how the Veterans Court endorsed that treatment of the Kings' lay evidence in the face of *Buchanan*, *Jandreau*, and *Davidson*. [1] Remarkably, the Board failed to cite any of these

---

[1] In fact, the language used by the Board here is strikingly similar to that which it used in *Davidson*. There, the Board said:

> In this case, there is no indication that the appellant is other than a layperson without the appropriate medical training and expertise, so she is not competent to provide a probative (persuasive) opinion on a medical matter such as the etiology of a disability.

*In re Davidson*, No. 02-16 322 (Bd. Vet. App. June 28, 2007). I struggle to understand how the outcome here is different when the Board gave lay testimony the same treatment it did in *Davidson* (i.e., because the witnesses lacks medical credentials, their testimony is not probative).

cases; rather, it instead, relied on two Veterans Court cases with contrary holdings that preceded *Buchanan* and *Jandreau*. *See Espiritu v. Derwinski*, 2 Vet. App. 492, 494-95 (1992); *Routen v. Brown*, 10 Vet. App. 183, 186 (1997), *aff'd on other grounds*, 142 F.3d 1434 (Fed. Cir. 1998).

The Board was entitled to weigh the persuasiveness of the Kings' lay testimony against the other evidence in the record. It was not permitted, however, to ignore that evidence merely because it was lay evidence. And, it was wrong to characterize that evidence as neither "competent" nor "probative."

## II

Despite this clear disregard of governing law, the majority attempts to salvage the Veterans Court's ruling, and that of the Board before it, by characterizing them as saying something different than they do. First, the majority says the Veterans Court did not "ignore the precedent of *Jandreau*." Majority at 11. It is hard to see how that can be so, however, when that Court not only failed to cite *Jandreau* and its progeny, but cited to contrary case law of its own which *Jandreau* overruled.

Next, the majority says that neither the Board nor the Veterans Court "deemed lay evidence categorically incompetent." Majority at 11. Again, it is hard to accept this proposition when the Board opinion expressly states that Mr. King's lay evidence was rejected *solely because it was lay evidence*. The Board made clear its view that "lay evidence does not constitute competent medical evidence" and, "lacks probative value" when assessing medical causation. This rejection of Mr. King's lay evidence — once more based on outdated and long-since rejected legal authority — could hardly be more categorical.

The Veterans Court erred as a matter of law by endorsing the Board's refusal to consider the Kings' lay testimony. Because the Veterans Court has, once more, chosen to ignore our binding, repeated case law to the contrary, we should reverse its decision and remand this matter for reconsideration and application of correct governing legal principles.