﻿Citation Nr: 18142039
Decision Date: 10/12/18 Archive Date: 10/12/18

DOCKET NO. 07-20 736
DATE: October 12, 2018

ORDER
Service connection for residuals of a neck injury is denied. 

FINDING OF FACT
The evidence does not establish that the Veteran has a neck disability that is causally related to his active service.

CONCLUSION OF LAW
The criteria for service connection for a neck disability are not met. 38 U.S.C. § 1110 (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran served on active duty from March 1970 to March 1975. 
This appeal comes to the Board of Veteran’s Appeals (Board) from a July 2008 rating decision by the Department Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi.
A video conference hearing was held in June 2009 in Jackson, Mississippi, before a Veterans Law Judge sitting in Washington, DC. A copy of the transcript of that hearing is of record. In November 2009, the Board denied the claim for service connection for a neck disorder. However, in June 2010, the parties moved the United States Court of Appeals for Veterans Claims (Court) to vacate and remand the Board’s November 2009 decision. In June 2011, the Board again denied the claim, and in February 2012, upon a joint motion, the Court vacated and remanded the Board’s decision to consider the Veteran’s submitted internet articles concerning medical evidence that degenerative disc disease can be caused or accelerated by strain injuries. 
In August 2012, the Board informed the Veteran that the Veterans Law Judge who held the hearing in 2009 was no longer employed by the Board, and noted that when a Veterans Law Judge holds a hearing the law requires that Judge to participate in the decision on the appeal. 38 U.S.C. § 7107(c) (West 2014); 38 C.F.R. § 20.202. Therefore, the Board offered the Veteran another hearing and explained his options. However, in August 2012, the Veteran declined the offer of another hearing. 
In January 2013 an addendum opinion was provided, and in May 2016 the Board remanded the neck disorder claim for further development. In accordance with the 2016 remand directives, addendum opinions were obtained in September 2016 and March 2018. The Board finds substantial compliance with the May 2016 Board remand directives. See Stegall v. West, 11 Vet. App. 268 (1998) (holding that a remand confers on the claimant, as a matter of law, the right to compliance with the remand order); See also D’Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding that substantial, rather than strict, compliance with remand directives is required). Pursuant to the May 2016 remand all treatment records were provided to the VA Examiners, the March 2018 and September 2016 examiners both noted that the claims file and the remand order had been reviewed, and they provided detailed rationale for the opinions that they provided. 

SERVICE CONNECTION FOR NECK DISABILITY 
The Veteran seeks service connection for the residuals of a neck injury. The Veteran claims that his cervical spine conditions were incurred during service when he was involved in a motor vehicle accident in December of 1972 and sustained whiplash. The Veteran’s service treatment records confirm that he was involved in a motor vehicle accident in December 1972, and that he was treated for whiplash and dizziness, and issued a cervical collar. Furthermore, service treatment records indicate treatment for whiplash and neck pain on several occasions in December 1972 and January 1973, with a January 1973 treatment note stating that the Veteran reported that his neck was feeling better, and that he had good cervical range of motion. In addition, the Veteran’s exit examination in December 1974 did not show any complaints of a neck disability or pain.
In January 1992, the Veteran reported several years of neck pain, was diagnosed with chronic neck pain, and underwent X-ray examination of the cervical spine that revealed some increased density on the lateral view projecting over the anterior arch of C1 vertebral body. A VA magnetic resonance imaging (MRI) of the Veteran’s cervical spine in 2007 showed cervical disc disease, multiple levels and some cervical stenosis. He was also diagnosed with cervical radiculopathy. A VA examination in February 2009 also resulted in the diagnosis of multi-level cervical degenerative disc disease with cervical stenosis.
Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303 (2017). “To establish a right to compensation for a present disability, a Veteran must show: ‘(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service’ --the so-called “nexus requirement.” Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).
The first element of Shedden is established for this claim because the record demonstrates that the Veteran has current cervical diagnoses. The Veteran’s most recent VA examination reports, dated September 2016 and March 2018, confirm his current diagnoses of cervical degenerative disc disease with spinal stenosis and cervical radiculopathy. 
Next, the record demonstrates that the Veteran was involved in a motor vehicle accident while in service that resulted in whiplash. Therefore, there was an in-service incurrence that involved an injury to the Veteran’s neck, and the second element of Shedden has also been met. As such, the dispositive question is whether there is a nexus between the Veteran’s whiplash injury incurred from the motor vehicle accident while in service, and the currently diagnosed cervical conditions. The weight of the competent evidence, however, weighs against a finding that the Veteran’s current diagnoses are the residuals of the spasm/whiplash/sprain or strain of the neck incurred in service.
The Board readily acknowledges that the Veteran is competent to report his neck pain, and the continuity of such pain following the motor vehicle accident in service. It has been established that evidence concerning continuity of symptoms after service may be considered to be competent, even where such is not supported by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The Board finds the Veteran to be a reliable historian of his experiences and perceived pain since service. See id.; See also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). However, there is no indication that he is competent to etiologically link any such neck pain to his active service and the injuries sustained therein. Although lay persons are competent to provide opinions on some medical issues, See Kahana v. Shinseki, 24 Vet. App. 428 (2011), as to the specific issue being decided herein, an opinion as to the etiology of the Veteran’s cervical conditions and whether they are etiologically related to the Veteran’s active service, falls outside the realm of common knowledge of a lay person. See Jandreau, 492 F.3d 1372 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer). The Veteran has not been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation. Nothing in the record demonstrates that the Veteran received any special training, or acquired any medical expertise, in evaluating complex cervical conditions. See King v. Shinseki, 700 F.3d 1339, 1345 (Fed.Cir.2012). Accordingly, the Veteran’s statements relating his current neck conditions to the injury sustained in service are lay evidence that do not constitute competent medical evidence and thus lack probative value.
Although the Veteran has reported having continuing neck pain, the first report of neck problems since service was not until January 1992, as described above. The Board notes that the complaints of neck symptomatology in 1992 date to approximately 17 years after the Veteran’s discharge from service. 
It was opined by the February 2009 VA examiner that it is less likely than not that the multilevel cervical degenerative disc disease with stenosis was caused by or a result of the old whiplash injury sustained in the service. The examiner explained that “there is no medical evidence that strain type injuries cause, predispose to, or accelerate the development of degenerative spine or disc disease.” 
The January 2013 VA examiner addressed the internet articles that were provided by the Veteran and found that “the emedicine.net article did not contribute helpful information for linking whiplash to degenerative disc disease, and that the patient.co.uk article makes the likelihood of whiplash causing spinal degenerative disc disease less likely.” That examiner also determined that it is less likely as not that the Veteran’s multilevel degenerative disc disease was caused by the whiplash injury sustained in service. 
A physical therapy report from June 2016 indicates that the physical therapist treating the Veteran had always treated the Veteran with the understanding that his cervical problems stemmed from in-service activities. However, the physical therapist did not provide any reasoned analysis for this assumption. A bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. See Miller v. West, 11 Vet. App. 345, 348 (1998). 
The September 2016 VA examiner determined that it was unlikely that the Veteran experienced neurological residuals of the whiplash injury in service. The examiner explained that if the Veteran had significant radiculopathy in-service “he would not have been able to wait for a significant length of time without worsening of sensory, muscle weakness, and atrophy over time.” Based on this analysis the examiner found that it was less likely than not that the Veteran could have waited over more than a decade for treatment of his cervical condition. Further, the examiner addressed the Veteran’s reported neck pain since the injury in 1972, and found that “at least as likely as not it could have been symptoms of a cervical strain, and later, due to the aging process he developed cervical degenerative disc disease with cervical stenosis. However, since degenerative disc disease is not due to, or the result of strain/spasm/whiplash injury, there is no link between his current cervical disabilities and his in-service injury.”
Similarly, the March 2018 VA examiner found that it was less likely than not that the Veteran could have waited the amount of time he did before seeking treatment for his neck condition, thus lessening the probability that the current conditions were related to the injury sustained in service. The examiner explained that “muscle spasm/whiplash/sprain or strain are soft tissue injuries, and medical science does not support these conditions lead to, cause, develop into degenerative disc disease with cervical stenosis.” 
The VA examiners each found, based upon current peer-reviewed medical literature, that a causal relationship between the current cervical disorders and the in-service whiplash could not be medically supported. The examiner’s opinions are probative because they are based on a review of the Veteran’s medical history, explain the basis for the conclusions, and the examiners were all qualified to render such opinions by training.
Medical evidence is considered probative when it is factually accurate, fully articulated, and provides sound reasoning for the conclusion. See Nieves-Rodriguez v. Peake, 22 Vet. App 295, 304 (2008). Medical opinions regarding the nexus between the Veteran’s motor vehicle accident in service and his currently diagnosed cervical conditions have been provided as follows: February 2009, January 2013, September 2016, and March 2018. In each instance the VA examiners exhaustively reviewed the Veteran’s file, including the medical and factual history, and opined that the Veteran’s cervical spine disabilities are not at least as likely as not related to the whiplash injury he suffered in service. 
The Board finds that, while the Veteran has current diagnoses of cervical spine disabilities, and evidence shows an in-service event resulting in whiplash, the preponderance of the evidence weighs against finding that the Veteran’s current disabilities began during service or are otherwise related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d). 
It is also worth noting, there is no evidence of arthritis of the cervical spine until many years after the Veteran’s separation from service, and no notation of arthritis of the cervical spine during service. Thus, service connection on a presumptive basis is also not warranted. 38 C.F.R. §§ 3.307(a)(3), 3.309(a). 
As the preponderance of the evidence is against the claim for service connection for a neck disability, the benefit-of-the-doubt rule is not applicable, and the claim must be denied. See 38 U.S.C. § 5107 (b) (2014); 38 C.F.R. § 3.102 (2017); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 
S.C. KREMBS
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD B. Temple, Associate Counsel