﻿Citation Nr: AXXXXXXXX
Decision Date: 01/29/21 Archive Date: 01/29/21

DOCKET NO. 200825-109583
DATE: January 29, 2021

ORDER

Readjudication of the service connection claim for a chronic right knee disorder, on the basis of substitution, is not warranted.

Service connection for hypertension, on the basis of substitution, is denied.

Service connection for a kidney disorder, on the basis of substitution, is denied.

Service connection for a heart disorder, on the basis of substitution, is denied.

Service connection for anemia, on the basis of substitution, is denied.

Service connection for erectile dysfunction, on the basis of substitution, is denied.

Service connection for a chronic left knee disorder, on the basis of substitution, is denied.

Service connection for gout, on the basis of substitution, is denied.

Service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), anxiety disorder, depressive disorder, adjustment disorder, and insomnia, on the basis of substitution, is denied.

FINDINGS OF FACT

1. In an unappealed September 2006 rating decision, the Agency of Original Jurisdiction (AOJ) denied service connection for right knee disability.

2. Since the September 2006 rating action, new evidence has not been received with respect to service connection for right knee disability that tends to prove or disprove the claim.

3. New evidence was received after a December 2017 rating decision denial that tends to prove or disprove the matter of entitlement to service connection for hypertension.

4. New evidence was received after a December 2017 rating decision denial that tends to prove or disprove the matter of entitlement to service connection for kidney disability.

5. Hypertension was not shown in service or within a year of service discharge, and is not otherwise etiologically related to the Veteran’s active service or due to a service-connected disability.

6. Kidney disability was not shown in service or within a year of service discharge, and is not otherwise etiologically related to the Veteran’s active service or due to a service-connected disability.

7. Heart disability was not shown in service or within a year of service discharge, and is not otherwise etiologically related to the Veteran’s active service or due to a service-connected disability.

8. Anemia was not shown in service or within a year of service discharge, and is not otherwise etiologically related to the Veteran’s active service or due to a service-connected disability.

9. Erectile dysfunction was not shown in service or within a year of service discharge, and is not otherwise etiologically related to the Veteran’s active service or due to a service-connected disability.

10. Left knee disability was not shown in service or within a year of service discharge, and is not otherwise etiologically related to the Veteran’s active service or due to a service-connected disability.

11. Gout was not shown in service or within a year of service discharge, and is not otherwise etiologically related to the Veteran’s active service or due to a service-connected disability.

12. Psychiatric disability was not shown in service or within a year of service discharge, and is not otherwise etiologically related to the Veteran’s active service or due to a service-connected disability.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the service connection claim for a chronic right knee disorder not been met. 38 U.S.C. §§ 101(35), 5103A, 5108; 38 C.F.R. §§ 3.156, 3.2501.

2. The criteria for service connection for hypertension have not been met. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.303, 3.304.

3. The criteria for service connection for a kidney disorder have not been met. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.303, 3.304, 3.310.

4. The criteria for service connection for a heart disorder have not been met. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.303, 3.304, 3.310.

5. The criteria for service connection for anemia have not been met. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.303, 3.304, 3.310.

6. The criteria for service connection for erectile dysfunction have not been met. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.303, 3.304, 3.310.

7. The criteria for service connection for a chronic left knee disorder have not been met. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.303, 3.304, 3.310.

8. The criteria for service connection for gout have not been met. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.303, 3.304, 3.310.

9. The criteria for service connection for an acquired psychiatric disorder have not been met. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.303, 3.304, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from June 1987 to May 1990. In October 2020, the Veteran died. The appellant is the Veteran’s surviving spouse.

In December 2020, the agency of original jurisdiction (AOJ) recognized the appellant as a valid substitute claimant in place of the Veteran for the issues on appeal. Accordingly, the appellant has been substituted as the claimant for the purposes of all claims that were pending on the date of the Veteran’s death.

A rating decision was issued under the legacy system in December 2017 and the Veteran submitted a timely notice of disagreement. In July 2020, the AOJ issued a statement of the case (SOC). The Veteran opted the claims into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting an August 2020 VA Form 10182, Decision Review Request: Board Appeal, identifying the July 2020 SOC. Therefore, the July 2020 SOC is the decision on appeal. The Veteran requested direct review by a Veterans Law Judge. Therefore, the Board may only consider the evidence of record at the time of the July 2020 SOC. 38 C.F.R. § 20.301.

Readjudication

Unappealed rating decisions generally are final. 38 U.S.C. § 7105(c); 38 C.F.R. §§ 3.104(a), 3.160(d), 20.302(a), 20.1103. However, an issue denied in a final rating decision will be readjudicated if new and relevant evidenced is presented or secured. 38 C.F.R. § 3.156(d). New evidence is evidence not previously part of the record. 38 C.F.R. § 3.2501(a)(1). Relevant evidence is evidence that tends to prove or disprove a matter in issue. It includes evidence that raises a new theory of entitlement. Id. 

Right Knee Disorder

In April 2006, the Veteran filed a service connection claim for a right knee disorder, which was denied by a September 2006 rating decision. The Veteran asserted that his right knee disorder was due to his active service. The AOJ found that the evidence showed that a right knee disorder existed prior to active service, but that there was no evidence that the Veteran’s right knee disorder was permanently worsened by his active service.

The evidence of record at the time of the September 2006 rating decision included service treatment records (STRs) and VA treatment records from April 2006 to August 2006. 

Although the Veteran was notified of the decision and his appellate rights, he did not submit a notice of disagreement with the decision. No further communication or evidence regarding this claim was received until August 19, 2017, when the Veteran filed a new service connection claim. Therefore, the September 2017 rating decision is final. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.104, 20.302, 20.1103.

In August 2017, the Veteran filed a new service connection claim for a right knee disorder, which was denied by a December 2017 rating decision. He again asserted that his right knee disorder was due to his active service. While new treatment records have been added to the claims file since the previous September 2006 rating decision, which consists of VA treatment records from November 2003 to August 2019, these records are not considered relevant because the records do not address whether the Veteran’s right knee disorder is related to his active service. They only address a fact that was already known at the time of the prior rating decision, namely that the Veteran experienced right knee pain. The records document his diagnosis and treatment, with no reference to his active service.

The Board finds that the Veteran has not submitted new and relevant evidence after the prior final rating decision in the legacy system warranting the readjudication of his service connection claim for a right knee disorder. Specifically, there is no new evidence that tends to prove that any right knee disorder may be etiologically related to the Veteran’s active service. As it merely addresses an element that was already established in the prior final rating action, namely the existence of a current disability, the new evidence is cumulative, and does not tend to prove or disprove the claim.

Accordingly, the evidence received since the prior denial is not new and relevant to the Veteran’s service connection claim for a right knee disorder, and therefore, readjudication of the claim is not warranted.

Hypertension and Kidney Disorder

A December 2017 rating decision denied service connection for hypertension and a kidney disorder. In the July 2020 SOC, the AOJ implicitly reopened the service connection claims for hypertension and a kidney disorder. The Board is bound by these favorable findings. 38 C.F.R. § 3.104(c).

Service Connection

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may also be established under 38 C.F.R. § 3.303(b), where a condition in service is noted but is not, in fact, chronic, or where a diagnosis of chronicity may be legitimately questioned. The continuity of symptomatology provision of 38 C.F.R. § 3.303(b) has been interpreted as an alternative to service connection only for the specific chronic diseases listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 718 F.3d 1331 (Fed. Cir. 2013).

Service connection may also be established with certain chronic diseases based upon a legal presumption by showing that the disorder manifested itself to a degree of 10 percent disabling or more within one year from the date of separation from service. Such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time.

Service connection may also be established on a secondary basis for a disability which is proximately due to, or the result of, a service-connected disability. 38 C.F.R. § 3.310(a). Secondary service connection may also be established for a disability which is aggravated by a service-connected disability. 

In order to prevail on the issue of secondary service connection, the record must show (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) medical nexus evidence establishing a connection between the service-connected disability and the current disability. Wallin v. West, 11 Vet. App. 509 (1998).

Hypertension, Kidney Disorder, and Heart Disorder

The Veteran filed service connection claims for hypertension, a kidney disorder, and a heart disorder, which were denied by a December 2017 rating decision. He asserted that his hypertension was due to his active service. He also asserted that his kidney disorder and heart disorder were due to either his hypertension and/or due to his service-connected hepatitis C.

For VA compensation purposes, the term “hypertension” means that the diastolic blood pressure is predominantly 90mm or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160mm or greater with a diastolic blood pressure of less than 90mm. Multiple blood pressure readings are required to confirm the diagnosis of hypertension with two or more readings on at least three different days. 38 C.F.R. § 4.104, Diagnostic Code 7101, Note 1.

The Veteran’s STRs do not show a diagnosis of hypertension during his active service. At his April 1987 entrance physical his blood pressure was 110/76. In May 1988, his blood pressure was 118/84. While in October 1988, he had elevated blood pressure readings of 132/100 and 128/94 while he had stitches places and removed, he was not diagnosed with hypertension. By December 1989, his blood pressure had returned to normal and was 122/78. The Veteran’s STRs do not show a diagnosis of hypertension, a kidney disorder, or a heart disorder during his active service.

The first evidence of any of these conditions in the Veteran’s medical records is in November 2003, over a decade after his separation from active service.

In November 2019, the Veteran was afforded a VA examination for his hypertension. After reviewing the Veteran’s claims file, interviewing the Veteran, and conducting an examination, the examiner opined that the Veteran’s hypertension was less likely than not due to the Veteran’s active service. The examiner reported that the Veteran had elevated blood pressure readings during his active service, the first was after he had stitches placed on his chin and the second was when getting the stitches removed. The examiner reported that those were normal physiological reasons for pain/anxiety and that all the Veteran’s other blood pressure readings were normal.

In May 2020, the Veteran was afforded a VA examination for his kidney disorder and heart disorder. After reviewing the Veteran’s claims file, interviewing the Veteran, and conducting an examination, the examiner opined that the Veteran’s kidney disorder was less likely than not due to the Veteran’s service-connected hepatitis C. The examiner reported that the Veteran’s chronic kidney disease was due to his hypertension. The examiner opined that the Veteran’s heart disorder was less likely than not due to the Veteran’s service-connected hepatitis C. The examiner reported that hepatitis C and a heart disorder were not medically related. The examiner reported that the Veteran’s heart disorder was secondary to his chronic kidney disease, which in turn was secondary to his hypertension.

The appellant submitted a medical article regarding hepatitis C and chronic kidney disease and a medical article regarding hepatitis C and coronary artery disease. However, the United States Court of Appeals for Veteran’s Claims (the Court) has held that a medical article or treatise “can provide important support when combined with an opinion of a medical professional” if it discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least “plausible causality” based upon objective facts rather than on an unsubstantiated lay medical opinion. Mattern v. West, 12 Vet. App. 222, 228 (1999). However, the medical articles submitted by the appellant were not accompanied by the opinion of any medical expert. The article speaks in terms too general to be of probative value to the current medical history.

After weighing all the evidence, the Board finds great probative value in the November 2019 and May 2020 VA examiners’ opinions. These negative opinions are sufficient to satisfy the statutory requirements of producing an adequate statement of reasons and bases where the expert has fairly considered material evidence which appears to support the Veteran’s position. Wray v. Brown, 7 Vet. App. 488, at 492-93 (1995). The November 2019 VA examiner opined that the Veteran’s hypertension was less likely than not due to his active service. In turn, the May 2020 VA examiner opined that the Veteran’s kidney disorder and heart disorder were less likely than not due to his hepatitis C and were due to his hypertension, which is not service connected.

Consideration has been given to the assertions of the Veteran and the appellant that the Veteran’s hypertension was due to his active service and that the Veteran’s kidney disorder and heart disorder were due to his service-connected hepatitis C. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issues in this case, the etiology of hypertension, a kidney disorder, and a heart disorder, falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). Hypertension, a kidney disorder, and a heart disorder are not the types of conditions that are readily amenable to mere lay diagnosis or probative comment regarding etiology, as the evidence shows that physical examinations, such as multiple blood pressure readings, kidney function studies, and heart studies, are needed to properly assess and diagnose the disorders. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

That is, although the Veteran and the appellant are arguably competent to report perceived symptoms of hypertension, a kidney disorder, and a heart disorder, neither has been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation. Nothing in the record demonstrates that either has received any special training or acquired any medical expertise in evaluating and diagnosing hypertension, a kidney disorder, or a heart disorder. See King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012). Accordingly, the assertions of the Veteran and the appellant do not constitute competent medical evidence.

The Veteran nor the appellant has not offered any medical opinion of record that refutes the conclusion of the VA examiners. As such, those opinions are given great weight. 

Accordingly, as the criteria for service connection for hypertension, a kidney disorder, and a heart disorder have not been met, the claims are denied.

Anemia, Erectile Dysfunction, Left Knee Disorder, and Gout

The Veteran filed service connection claims for anemia, erectile dysfunction, a left knee disorder, and gout, which were denied by a December 2017 rating decision. He asserted that these conditions were either due to his active service or due to his service-connected hepatitis C.

The Veteran’s STRs from his active service do not show any complaints, treatment, or diagnosis of anemia, erectile dysfunction, a chronic left knee disorder, or gout during his active service.

The first objective evidence of anemia and erectile dysfunction is not until November 2003. The first objective evidence of a left knee disorder is not until January 2008. The first objective evidence of gout is not until May 2009. As such, the first evidence for any of these conditions was diagnosed over a decade after his separation from active service.

The appellant submitted a medical article regarding hepatitis C and erectile disfunction. However, the Court has held that a medical article or treatise “can provide important support when combined with an opinion of a medical professional” if it discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least “plausible causality” based upon objective facts rather than on an unsubstantiated lay medical opinion. Mattern, 12 Vet. App. 222, 228. However, the medical article submitted by the appellant was not accompanied by the opinion of any medical expert. The article speaks in terms too general to be of probative value to the current medical history.

Neither the Veteran nor the appellant submitted any competent medical opinion of record suggesting that the Veteran’s anemia, erectile dysfunction, a left knee disorder, or gout might be related to his active service or due to his service-connected hepatitis C.

Consideration has been given to the assertions of the Veteran and the appellant that the Veteran’s anemia, erectile dysfunction, a left knee disorder, and gout were due to his active service and/or due to his service-connected hepatitis C. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), the specific issue in this case, namely the etiology of the Veteran’s anemia, erectile dysfunction, a left knee disorder, and gout, falls outside the realm of common knowledge of a lay person. See Jandreau, 492 F.3d 1372. Anemia, erectile dysfunction, a left knee disorder, and gout are not the types of conditions that are readily amenable to mere lay diagnosis or probative comment regarding etiology, as the evidence shows that examinations that include objective medical tests, such blood tests and x-rays, are needed to properly assess and diagnose the disorders. See Davidson, 581 F.3d 1313.

That is, although the Veteran and the appellant are arguably competent to report perceived symptoms of the Veteran’s anemia, erectile dysfunction, a left knee disorder, and gout, to the extent they are identifiable by observation, neither has been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation. Nothing in the record demonstrates that they received any special training or acquired any medical expertise in evaluating blood disorders, sexual dysfunction, or musculoskeletal disorders. See King, 700 F.3d 1339, 1345. Accordingly, this lay evidence does not constitute competent medical evidence and lacks probative value.

Accordingly, the criteria for service connection for anemia, erectile dysfunction, gout, and a chronic left knee disorder have not been met, and the claims are denied.

Acquired Psychiatric Disorder

The Veteran filed a service connection claim for an acquired psychiatric disorder, which was denied by a December 2017 rating decision. He asserted that he has an acquired psychiatric disorder due to his active service. He also asserted that his acquired psychiatric disorder was due to his knee disorders.

As discussed more fully above, the Veteran is not service connected for any knee disorder.

The Veteran reported that he had adjustment disorder with mixed anxiety, depression, alcohol dependence, drug dependence, and insomnia due to his active service.

The Veteran’s STRs do not show symptoms, treatment, or diagnoses for an acquired psychiatric disorder. He had normal psychiatric findings at his entrance physical in April 1987 and specifically denied having any depression or excessive worry.

After the Veteran’s separation from active service, his medical records show that in November 2003, the Veteran began receiving mental health treatment.

In July 2020, the Veteran was afforded a VA examination. After reviewing the Veteran’s claims file, interviewing the Veteran, and conducting an examination, the examiner diagnosed the Veteran with PTSD due to childhood abuse and compounded by post-service events of being shot and losing a friend. The examiner also diagnosed the Veteran with depressive disorder secondary to his PTSD. The examiner opined that the Veteran’s acquired psychiatric disorder was less likely than not due to the Veteran’s service-connected hepatitis C. The examiner reported that the Veteran’s acquired psychiatric disorder was not due to his active service. The examiner reported that the Veteran was not diagnosed with adjustment disorder or insomnia and that any sleep difficulties were subsumed by his PTSD and depressive disorder.

The claims file contains no competent evidence that any current acquired psychiatric disorder had its onset in service or is otherwise etiologically related to service. The record contains no evidence of any mental health symptoms in service or at discharge, and there is no competent medical opinion which even suggests that any acquired psychiatric disorder even may be the result of his active service. The first evidence of any mental health symptoms is not until 2003, over a decade after his separation from service.

While the VA examiner reported that the Veteran’s acquired psychiatric disorder preexisted the Veteran’s active service, a veteran is presumed to have been in sound condition when examined, accepted, and enrolled for service except as to defects, infirmities, or disorders noted at the time of examination, acceptance, enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C. § 1111; 38 C.F.R. § 3.304. A preexisting injury or disease is considered to have been aggravated by active service where there is an increase in disability during such service, unless clear and unmistakable evidence shows that the increase in disability is due to the natural progress of the disease. 38 U.S.C. § 1153; 38 C.F.R. § 3.306.

The Veteran had a normal psychiatric examination at his entrance physical in April 1987 and specifically denied having any depression or excessive worry. The Veteran’s STRs do not show any diagnosis of a mental health condition prior to his active service. As such, the record does not clearly and unmistakably show that the Veteran’s acquired psychiatric disorder preexisted his active service. As such, service connected based on aggravation of a preexisting disability is not warranted.

After weighing all the evidence, the Board finds great probative value in the July 2020 VA examiner’s opinion and findings that the Veteran’s acquired psychiatric disorder was not due to his active service. The VA examiner’s negative opinions are sufficient to satisfy the statutory requirements of producing an adequate statement of reasons and bases where the expert has fairly considered material evidence which appears to support the Veteran’s position, including the Veteran’s assertion that his acquired psychiatric disorder was due to his active service. Wray v. Brown, 7 Vet. App. 488, at 492-93 (1995).

Consideration has been given to the personal assertion of the Veteran and the appellant that the Veteran’s acquired psychiatric disorder was the result of his active service. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issues in this case, the etiology of an acquired psychiatric disorder, falls outside the realm of common knowledge of a lay person. See Jandreau, 492 F.3d 1372. The etiology of an acquired psychiatric disorder is not the type of question that is readily amenable to mere lay diagnosis, as the evidence shows that examinations, which may include mental status examinations, are needed to properly assess and diagnose the disorder. See Davidson, 581 F.3d 1313.

That is, although the Board readily acknowledges that the Veteran and the appellant are competent to report mental health symptoms, neither the Veteran nor the appellant have been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to whether his acquired psychiatric disorder was due to the Veteran’s active service. Nothing in the record demonstrates that they have received any special training or acquired any medical expertise in evaluating acquired psychiatric disorders. See King, 700 F.3d 1339, 1345. Accordingly, the assertions of the Veteran and the appellant do not constitute competent medical evidence.

Accordingly, the criteria for service connection for an acquired psychiatric disorder have not been met, and the claim is denied.

 

 

Thomas H. O'Shay

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. Berryman, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.