﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/20 Archive Date: 12/31/20

DOCKET NO. 200819-105250
DATE: December 31, 2020

ORDER

1. Service connection for hypertension is denied.

2. For the period from January 23, 2018 forward, a rating in excess of 10 percent for an unspecified anxiety disorder is denied.

3. Service connection for a lumbar spine disability is denied.

4. Service connection for a deviated nasal septum is denied.

FINDINGS OF FACT

1. The Veteran currently has hypertension.

2. The Veteran did not experience an in-service injury, disease, or event related to hypertension.

3. Symptoms of hypertension were not chronic during service or continuous since service discharge, and did not manifest to a degree of 10 percent within one year of service discharge.

4. The current hypertension is not related to service.

5. For the period from January 23, 2018 forward, the Veteran’s unspecified anxiety disorder has more nearly approximated occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress.

6. The service treatment records are complete. 

7. The Veteran has a current diagnosis of arthritis of the lumbar spine. 

8. The Veteran did not experience a lumbar spine injury or disease during service. 

9. Symptoms of arthritis were not chronic in service or continuous since service, and arthritis did not manifest to a compensable degree within one year of service. 

10. The current lumbar spine disability is not related to service. 

11. The Veteran does not have a current diagnosis of a deviated nasal septum. 

CONCLUSIONS OF LAW

1. The criteria for service connection for hypertension have not been met. 38 U.S.C. §§ 1110, 1112, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.102, 3.303, 3.307, 3.309.

2. The criteria for a rating in excess of 10 percent for the service-connected unspecified anxiety disorder have not been met for any period. 38 U.S.C. §§ 1155, 5103, 5103A; 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.7, 4.130, Diagnostic Code 9413.

3. The criteria for service connection for a lumbar spine disability have not been met. 38 U.S.C. §§ 1101, 1112, 1110, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.102, 3.303, 3.307, 3.309. 

4. The criteria for service connection for a deviated nasal septum have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1963 to September 1967. The Veteran declined a Board of Veterans Appeals (Board) hearing by selecting Direct Review by a Veterans Law Judge on the August 2020 VA Form 10182 Notice of Disagreement: Board Appeal. 

The Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA), creates a new framework of review for veterans disagreeing with VA’s decision on their claim. This decision has been written consistent with the new AMA framework.

In the July 2020 statement of the case (SOC) under the legacy appeals process, the agency of original jurisdiction (AOJ) found that new and material evidence had been submitted to warrant re-opening the claim for service connection for hypertension. Under the new AMA process, new and relevant evidence (a lower threshold), is used to determine whether a claim should be reopened and readjudicated on its underlying merits. As new and material evidence (and therefore new and relevant evidence as well) was found by the AOJ, the Board will accept this finding and proceed immediately to re-adjudicate the claim on its underlying merits, meaning on a de novo basis.

Service Connection Legal Authority

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. §§ 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. §§ 3.303(d). Service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in service disease or injury and the current disability.

Where the evidence shows a “chronic disease” such as arthritis or hypertension in service or “continuity of symptoms” after service, the disease shall be presumed to have been incurred in service. For the showing of “chronic” disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of “continuity of symptoms” after service is required for service connection. 38 C.F.R. § 3.303(b).

Additionally, where a veteran served 90 days or more of active service, and certain chronic diseases, such as arthritis or hypertension, become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. 38 C.F.R. §§ 3.307, 3.309(a).

In order to establish presumptive service connection for a disease associated with exposure to certain herbicide agents, the evidence must show the following: (1) service in the Republic of Vietnam (Vietnam) during the period beginning on January 9, 1962, and ending on May 7, 1975 (or was otherwise exposed to an herbicide agent during active service); (2) a current disability from a disease associated with exposure to certain herbicide agents enumerated under 38 C.F.R. § 3.309(e); and (3) that the current disease manifested to a degree of 10 percent or more within the specified time period prescribed in § 3.307(a)(6)(ii). 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307(a)(6), 3.309(e).

If a veteran was exposed to an herbicide agent during active military, naval, or air service, the listed diseases will be service connected, if the requirements of 38 C.F.R. § § 3.307(a) are met, even if there is no record of such disease during service. 

The Veterans’ Claims Assistance Act of 2000 (VCAA) enhanced VA’s duty to notify and assist claimants in substantiating their claims for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The Board finds that in this case VA met the duties under the VCAA to notify and assist. In this case, neither the Veteran nor the representative has raised specific contentions regarding VCAA duties.

1. Service Connection for Hypertension

The Veteran claims that the current hypertension is related to service. See January 2019 Notice of Disagreement.

The evidence shows a current diagnosis of hypertension. July 2020 VA treatment records and others throughout the period on appeal reflect a current diagnosis of hypertension.

After a review of all the evidence of record, lay and medical, the Board finds that the weight of the evidence shows no vascular injury or disease, that the current hypertension did not have onset during service, and is not otherwise caused by service. Service treatment records do not show any complaints, symptoms, diagnosis, or treatment for high blood pressure or hypertension, including no chronic symptoms of hypertension during service. For example, an October 1967 service separation examination report reveals blood pressure that was 110/80.

The lay and medical evidence of record weighs against a finding of continuous symptoms of hypertension since service separation; therefore, presumptive service connection under the provisions of 38 C.F.R. § 3.303(b) is not warranted based on either “chronic” in-service or “continuous” post-service symptoms. As discussed above, neither the service treatment records nor the October 1967 service separation examination indicated any history, findings, or diagnosis of hypertension, or any other indicators of high blood pressure. The earliest evidence of hypertension is not shown until April 2011 in a VA treatment record showing that the Veteran presented with hypertension over 43 years after service separation and over 42 years outside of the applicable presumptive period. 

The same evidence also shows that symptoms of hypertension did not manifest to a degree of 10 percent or more within one year of service separation; therefore, presumptive service connection under the provisions of 38 C.F.R. § 3.303(b) is not warranted. Specifically, the medical and lay evidence reflects that the Veteran was first diagnosed with hypertension many years after service discharge. As hypertension did not manifest within one year of service separation, the criteria for manifestation of hypertension to a compensable (i.e., at least 10 percent) degree within one year of service separation are not met. 38 C.F.R. § 4.104, DC 7101.

On the question of a direct nexus between the current hypertension and service, the Board finds that the preponderance of the lay and medical evidence is against a finding that the currently diagnosed hypertension is causally related to service. The Board has considered the Veteran’s assertion on the January 2019 Notice of Disagreement that the current hypertension is directly related to exposure to herbicides including Agent Orange during service in Vietnam. Specifically, the Board has considered the Veteran’s assertion that the Institute of Medicine has found sufficient evidence of an association between exposure to Agent Orange and hypertension. 

However, the Board finds that the Veteran is not competent to assert a nexus between the current diagnosis of hypertension and in-service exposure to herbicides. This is because discerning the etiology of hypertension is a medically complex process which requires specialized medical knowledge and training which the Veteran has not been shown to possess. 

The weight of the evidence shows that hypertension (high blood pressure) first had onset decades after active service, including no treatment for high blood pressure until after service and no diagnosis of hypertension until April 2011. Further, the record does not contain a competent opinion establishing a nexus between the current hypertension and active service. For these reasons, the Board finds that the weight of the evidence is against service connection for hypertension, and the claim is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

2. Rating Unspecified Anxiety Disorder from January 23, 2018 Forward

Disability ratings are based on the average impairment of earning capacity resulting from disability. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability more closely approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7.

Under 38 C.F.R. § 4.130, General Rating Formula for Mental Disorders, psychiatric conditions warrant a 10 percent disability evaluation if it is productive of occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication.

A 30 percent rating is warranted when the disorder is manifested by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). See 38 C.F.R. § 4.130.

A 50 percent disability evaluation is warranted if it is productive of occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect, circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent rating contemplates occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. 

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name.

The above set of symptoms is not an exclusive or exhaustive list. Rather, it serves as an example of the symptoms that would justify a total rating. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). The United States Court of Appeals for the Federal Circuit in Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-117 (Fed. Cir. 2013), however, noted the “symptom-driven nature” of the General Rating Formula, and observed that “a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration.” Accordingly, the evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the Rating Schedule. Instead, VA must consider all symptoms of a Veteran’s condition that affect the level of occupational and social impairment, including, if applicable, those identified in the DSM.

In its evaluation, the Board shall consider all information and lay and medical evidence that is of record. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of the matter, the Board shall give the benefit of the doubt to the claimant. 

The Veteran seeks an increased rating higher than 10 percent for the service-connected unspecified anxiety disorder for the period from January 23, 2018 forward. 

After a review of all the evidence, lay and medical, the Board finds that, for the period from January 23, 2018 forward, the unspecified anxiety disorder has more nearly approximated occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress. During a March 2018 VA examination, the examiner assessed that the Veteran experienced occupational and social impairment due to mild or transient symptoms which decrease work efficiency and the ability to perform occupational tasks only during periods of significant stress. The Veteran reported problems sleeping and occasionally feeling angry or stressed. The examiner indicated that the Veteran had symptoms of anxiety. The Veteran reported that he had a good marital relationship, good relationships with his two adult children, enjoyed playing golf, and was able to spend a lot of time with his two grandchildren. 

The Board has carefully considered the Veteran’s assertions that he experiences problems sleeping, experiences symptoms of anxiety, and occasionally feels angry or stressed. However, considering the severity, frequency, and duration of these symptoms, the Board finds that these psychiatric symptoms more nearly approximate occupational and social impairment due to mild or transient symptoms that decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication. 

With regard to sleep impairment, the Veteran reported “I still have problems sleeping. For years, I used to wake up at 2 a.m.… I don’t wake up at 2 a.m. daily anymore, but I still do occasionally. I will take ½ capsule of Tylenol PM several times a week and that seems to help.” The occasional sleep impairment does not approximate chronic sleep impairment contemplated by the 30 percent rating criteria. 

With regard to anxiety, the VA examiner noted that the Veteran’s mood and affect were normal and appropriate to the situation, and that the Veteran did not appear anxious. The VA examiner also described the Veteran’s past medical history, noting that the Veteran had participated intermittently in individual therapy for anxiety from 2012 to October of 2014, and that he returned to the mental health clinic in January 2018 for problems with mild anxiety, but was not prescribed any psychotropic medications. This tends to show that, while the Veteran experiences anxiety, the anxiety is limited in severity, frequency, and duration (being described as mild, not requiring medication, and not requiring regular clinic visits) so as to more nearly approximate occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress.

With regard to the degree of social impairment, the overall disability picture does not more nearly approximate occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. The evidence does not show intermittent periods of inability to perform occupational tasks due to any symptoms, including sleep impairment and reported anxiety. The evidence shows a good marital relationship, good relationships with his adult children, and the ability to enjoy hobbies including golfing and spending time with his grandchildren. This is evidence against a finding of social impairment.

For these reasons, the Board finds that the symptomatology of the psychiatric disorder more nearly approximates the criteria for a 10 percent disability rating for the entire rating period on appeal, and does not more nearly approximate occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks contemplated by a 30 percent rating.

The Board finds the March 2018 VA examiner’s medical opinion is the most probative evidence of record as to the issue of the severity of the psychiatric disorder. Specifically, the VA examiner interviewed the Veteran and conducted an in-person examination. Moreover, the examiner had the requisite medical expertise and had sufficient facts and data on which to base the conclusions offered. As such, the Board accords the March 2018 VA examination opinion great probative weight. Thus, the Board finds that the most persuasive evidence of record shows that the Veteran’s psychiatric disorder symptomatology more nearly approximates the criteria for a 10 percent disability rating. As such, the Board finds that the preponderance of the evidence is against a rating in excess of 10 percent for a psychiatric condition for the period from January 23, 2018 forward, and the claim must be denied. See 38 U.S.C. § 5107.

3. Service Connection for Lumbar Spine Disability

The Veteran asserts that the current lumbar spine disability is related to service. Specifically, the Veteran asserts that the current degenerative arthritis of the lumbar spine is related to combat in Vietnam, although he does not assert that the back was actually injured during combat, or that he had continuous symptoms of the low back since the time of combat, including at a later date when the exigencies of combat would not have precluded treatment for any back complaints that would have existed. See January 2019 Notice of Disagreement. 

Regarding a current disability, the evidence shows a current diagnosis of mild osteoarthritis of the thoracic spine, and mild to moderate osteoarthritis of the lumbar spine. See July 2020 private imaging report. 

Regarding an in-service injury, the weight of the evidence shows no in-service low back injury or disease. Service treatment records do not contain complaints of or treatment for a lumbar spine disability during service. A Report of Medical Examination at separation from service in August 1967 shows that the Veteran’s spine and musculoskeletal system was evaluated to be clinically normal. On an August 1967 Report of Medical History, the Veteran also denied arthritis or rheumatism and denied swollen or painful joints. 

The Board finds that the service treatment records are complete. The service treatment records document care that the Veteran sought throughout the course of service and include documentation of care that the Veteran sought for foot pain, rhinitis, a cold, and a sore throat. See February, March, and August 1964 service treatment records. The Board finds that a low back injury or low back symptoms are the type of complaints that would have been recorded had they been reported during service, as the service treatment records document numerous other orthopedic complaints, specifically for foot pain, on four separate occasions in February 1964. See February 1964 service treatment records. 

After a review of all the evidence of record, lay and medical, the Board finds that the weight of the evidence demonstrates that the current lumbar spine disability is not caused by, or related to, an injury, disease, or event during service. The Board has carefully considered the Veteran’s assertion on the January 2019 Notice of Disagreement that the current back condition “is combat related” and that service connection is therefore warranted for a back condition. However, the Board notes that having combat experience alone does not constitute an orthopedic injury, especially where no specific injury is asserted or claimed, and no identifiable residual symptoms are even alleged to have followed such in-service combat. 

To the extent that the Veteran now, as part of the current claim, attempts to assert a nexus between the current lumbar spine disability and non-specific combat service, in the absence of any low back symptoms or treatment during the rest of service, including when the Veteran was removed from the exigencies of combat, while the Veteran in fact sought treatment for other symptoms and orthopedic complaint during the same service, the Board finds that the Veteran is not competent to now make the nexus between the current low back disability first shown decades after service and the general activities of combat service. Determining the etiology of arthritis of the lumbar spine, especially over decades when no symptoms were present, requires specialized medical knowledge and training, which the Veteran has not been shown to possess. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011) (holding that ACL injury is too “medically complex” for lay diagnosis); King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2009) (holding that it was not erroneous for the Board to find that a lay veteran claiming service connection for a back disorder and his wife lacked the “requisite medical training, expertise, or credentials needed to render a diagnosis” and that their testimony “could not establish medical causation nor was it a competent opinion as to medical causation”); Clyburn v. West, 12 Vet. App. 296, 301 (1999) (holding that a veteran is not competent to relate currently diagnosed chondromalacia patellae or degenerative joint disease to the continuous post-service knee symptoms); Savage v. Gober, 10 Vet. App. 488, 496-97 (1997) (requiring that a veteran present medical nexus evidence relating currently diagnosed arthritis to in-service back injury).

The Board finds that the weight of the evidence shows that symptoms of the current lumbar spine arthritis were not chronic during service, were not continuous since service discharge, and did not manifest to a compensable degree within one year of service discharge. The weight of the evidence also shows that the currently diagnosed low back disability is not otherwise related to reported events of service. 

On the question of direct nexus to service, a July 2020 VA examination report shows that the first diagnosis of degenerative arthritis of the lumbar spine was in July 2020. The July 2020 VA examiner opined that the current lumbar spine disability is less likely than not related to service. The VA examiner reasoned that there was no objective evidence in the medical record that the Veteran had a diagnosis of a back condition that was incurred in or caused by service, that the service treatment records are silent for diagnosis and or treatment of a lumbar spine condition during service, and that the current lumbar spine disability was diagnosed many years after service discharge. 

The weight of the evidence shows no chronic symptoms of arthritis of the lumbar spine during service or continuous symptoms of arthritis of the lumbar spine since service separation, or arthritis to 10 percent within one year of service. The records do not reflect any complaints of or treatment for a lumbar spine disability until July 2020, which is over 50 years after service discharge. 

As the lay and medical evidence also weighs against a finding of continuous symptoms of arthritis of the lumbar spine since service separation, presumptive service connection under the provisions of 38 C.F.R. § 3.303(b) is not warranted based on either “chronic” in-service or “continuous” post-service symptoms, or symptoms manifest to 10 percent or more within one year of service discharge. As discussed above, neither the service treatment records, nor the physical examination performed at service separation indicate any history, findings, or diagnosis of degenerative arthritis of the lumbar spine. Rather, the evidence shows that symptoms of arthritis were not manifest until many years after service discharge. 

The first complaints of a lumbar spine disability, specifically low back pain, were in July 2011, over 43 years after service discharge, and the first x-ray evidence of arthritis of the lumbar spine was in July 2020, over 50 years after service discharge. The approximately 43-year-period between service and complaints of a lumbar spine disability is a factor that weighs against a finding of in-service incurrence, including by continuous symptoms since service from which service incurrence could be presumed. See Buchanan v. Nicholson, 451 F.3d 1336 (Fed. Cir. 2006) (the lack of contemporaneous medical records is one fact the Board can consider and weigh against the other evidence, although the lack of such medical records does not, in and of itself, render the lay evidence not credible); see also Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (the passage of many years between discharge from active service and the medical documentation of a claimed disability is one factor to consider as evidence against a claim of service connection). 

The same evidence also shows that symptoms of degenerative arthritis of the lumbar spine did not manifest to a degree of 10 percent or more within one year of service separation; therefore, presumptive service connection under the provisions of 38 C.F.R. § 3.303(a) is not warranted. Specifically, the medical and lay evidence reflects that the Veteran was first diagnosed with degenerative arthritis of the lumbar spine many years after service discharge. As degenerative arthritis did not manifest within one year of service separation, the criteria for manifestation of lumbar spine arthritis, in the form of degenerative arthritis to a compensable (i.e., at least 10 percent) degree within one year of service separation are not met. See 38 C.F.R. § 4.71a, Diagnostic Code 5003. 

On the question of direct nexus between the current lumbar spine disability and service, the Board finds that the preponderance of the lay and medical evidence is against a finding that the currently diagnosed arthritis of the lumbar spine is causally related to service. The weight of the evidence shows that symptoms of arthritis of the lumbar spine began many years after service discharge, and that lumbar spine arthritis was not diagnosed until over 50 years after service, in July 2020. As discussed above, service treatment records do not reflect any complaints of or treatment for lumbar spine arthritis during service. Rather, the record shows that the first complaints of a lumbar spine disability were in July 2011, over 43 years after service discharge. See July 2011 VA treatment records. 

Thus, after a review of all the evidence, lay and medical, the Board finds that the weight of the evidence shows that the current lumbar spine arthritis did not have onset during service, or within one year of service discharge, and is not otherwise related to service. As a result, service connection is not warranted on a direct basis. The weight of the competent and credible evidence of record demonstrates no relationship between the Veteran’s current lumbar spine arthritis and active service. For these reasons, the Board finds that the preponderance of the evidence is against service connection for lumbar spine arthritis, and the claim is denied. Because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application, and the claim is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. 

4. Service Connection for Deviated Nasal Septum

The Veteran asserts that service connection is warranted for a deviated nasal septum. See August 2020 VA Form 10182 Notice of Disagreement: Board Appeal. 

After a review of all the evidence, lay and medical, the Board finds that the weight of the evidence shows that the Veteran does not have a current disability of a deviated nasal septum. A July 2020 VA examiner wrote that for the claimed condition of a deviated nasal septum there was no diagnosis because there were no findings, signs, or symptoms to support a diagnosis. 

The requirement of a current disability is satisfied when a veteran has a disability at the time of filing a service connection claim, during the pendency of that claim, or just prior to the filing of a claim, even if the disability resolves prior to adjudication of the claim. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); Romanowsky v. Shinseki, 26 Vet. App. 289 (2013). In the absence of proof of a current disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

As the evidence shows that the Veteran does not have a current diagnosis of a deviated nasal septum, and has not been diagnosed with a disability of this nature during the pendency of the claim or just prior to the filing of the claim, the preponderance of the evidence is against the claim, and the claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. 

 

J. PARKER

Veterans Law Judge

Board of Veterans’ Appeals

Department of Veterans Affairs A. Caruso, Attorney for the Board

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.