Citation Nr: AXXXXXXXX
Decision Date: 08/31/21 Archive Date: 08/31/21

DOCKET NO. 200909-109434
DATE: August 31, 2021

ORDER

Readjudication of the claim of entitlement to service connection for T-cell lymphoma is warranted.

Readjudication of the claim of entitlement to service connection for retroperitoneal liposarcoma is warranted.

Readjudication of the claim of entitlement to service connection for an abdominal scar as secondary to retroperitoneal liposarcoma is warranted.

Readjudication of the claim of entitlement to service connection for femoral nerve damage of the right leg as secondary to retroperitoneal liposarcoma is warranted.

Readjudication of the claim of entitlement to service connection for oral radiation burns as secondary to T-cell lymphoma and/or retroperitoneal liposarcoma is warranted.

Readjudication of the claim of entitlement to service connection for partial diaphragm removal as secondary to retroperitoneal liposarcoma is warranted.

Readjudication of the claim of entitlement to service connection for status post right colectomy with reanastomosis as secondary to retroperitoneal liposarcoma is warranted.

Readjudication of the claim of entitlement to service connection for status post right nephrectomy as secondary to retroperitoneal liposarcoma is warranted.

Readjudication of the claim of entitlement to service connection for panic attacks/anxiety (claimed as mental health) as secondary to T-cell lymphoma and/or retroperitoneal liposarcoma is warranted.

Readjudication of the claim of entitlement to a total disability rating based on individual unemployability as a result of service-connected disabilities (TDIU) is denied.

Service connection for T-cell lymphoma is granted.

Service connection for retroperitoneal liposarcoma is granted.

Service connection for an abdominal scar as secondary to retroperitoneal liposarcoma is granted.

Service connection for femoral nerve damage of the right leg as secondary to retroperitoneal liposarcoma is granted.

Service connection for oral radiation burns as secondary to T-cell lymphoma is granted.

Service connection for partial diaphragm removal as secondary to retroperitoneal liposarcoma is granted.

Service connection for status post right colectomy with reanastomosis as secondary to retroperitoneal liposarcoma is granted.

Service connection for status post right nephrectomy as secondary to retroperitoneal liposarcoma is granted.

Service connection for panic attacks/anxiety (claimed as mental health) as secondary to retroperitoneal liposarcoma and/or T-cell lymphoma is denied.

FINDINGS OF FACT

1. After a May 2019 rating decision denied service connection for T-cell lymphoma, the Veteran submitted new and relevant evidence in November 2020.

2. After a May 2019 rating decision denied service connection for retroperitoneal liposarcoma, the Veteran submitted new and relevant evidence in November 2020.

3. After a May 2019 rating decision denied service connection for an abdominal scar as secondary to retroperitoneal liposarcoma, the Veteran submitted new and relevant evidence in November 2020.

4. After a May 2019 rating decision denied service connection for femoral nerve damage of the right leg as secondary to retroperitoneal liposarcoma, the Veteran submitted new and relevant evidence in November 2020.

5. After a May 2019 rating decision denied service connection for oral radiation burns as secondary to T-cell lymphoma and/or retroperitoneal liposarcoma, the Veteran submitted new and relevant evidence in November 2020.

6. After a May 2019 rating decision denied service connection for partial diaphragm removal as secondary to retroperitoneal liposarcoma, the Veteran submitted new and relevant evidence in November 2020.

7. After a May 2019 rating decision denied service connection for status post right colectomy with reanastomosis as secondary to retroperitoneal liposarcoma, the Veteran submitted new and relevant evidence in November 2020.

8. After a May 2019 rating decision denied service connection for status post right nephrectomy as secondary to retroperitoneal liposarcoma, the Veteran submitted new and relevant evidence in November 2020.

9. After a May 2019 rating decision denied service connection for panic attacks/anxiety (claimed as mental health) as secondary to T-cell lymphoma and/or retroperitoneal liposarcoma, the Veteran submitted new and relevant evidence in November 2020.

10. After a May 2019 rating decision denied a TDIU, no new and relevant evidence has been received by VA.

11. The probative evidence reflects that it is as likely as not that the Veteran's T-cell lymphoma and retroperitoneal liposarcoma are related to in-service exposure to herbicide agents.

12. The probative evidence reflects that it is as likely as not that the Veteran's abdominal scar and femoral nerve damage of the right leg, partial diaphragm removal, disability of status post right colectomy with reanastomosis, and status post right nephrectomy are as likely as not due to her retroperitoneal liposarcoma.

13. The Veteran's oral radiation burn(s) is due to her T-cell lymphoma.

14. The most probative evidence of record does not reflect that it is as likely as not that the Veteran has an acquired psychiatric disability which is caused by, or aggravated by, a service-connected disability.

CONCLUSIONS OF LAW

1. Evidence received since the last denial of entitlement to service connection for T-cell lymphoma, retroperitoneal liposarcoma, an abdominal scar as secondary to retroperitoneal liposarcoma, femoral nerve damage of the right leg as secondary to retroperitoneal liposarcoma, oral radiation burns as secondary to T-cell lymphoma and/or retroperitoneal liposarcoma, partial diaphragm removal as secondary to retroperitoneal liposarcoma, status post right nephrectomy as secondary to retroperitoneal liposarcoma, and panic attacks/anxiety (claimed as mental health) as secondary to T-cell lymphoma and/or retroperitoneal liposarcoma is new and relevant, and readjudication of the claims is warranted. 38 U.S.C. §§ 5108, 7105; 38 C.F.R. § 3.156.

2. Evidence received since the last denial of entitlement to a TDIU is not new and relevant, and readjudication of the claim is not warranted. 38 U.S.C. §§ 5108, 7105; 38 C.F.R. §§ 3.156, 4.16.

3. The criteria for service connection for T-cell lymphoma are met. 38 U.S.C. §§ 1101, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

4. The criteria for service connection for retroperitoneal liposarcoma are met. 38 U.S.C. §§ 1101, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

5. The criteria for service connection for an abdominal scar as secondary to retroperitoneal liposarcoma have been met. 38 U.S.C. §§ 1101, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

6. The criteria for service connection for femoral nerve damage of the right leg as secondary to retroperitoneal liposarcoma have been met. 38 U.S.C. §§ 1101, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

7. The criteria for service connection for oral radiation burns as secondary to T-cell lymphoma and/or retroperitoneal liposarcoma have been met. 38 U.S.C. §§ 1101, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

8. The criteria for service connection for partial diaphragm removal as secondary to retroperitoneal liposarcoma have been met. 38 U.S.C. §§ 1101, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

9. The criteria for service connection for status post right colectomy with reanastomosis as secondary to retroperitoneal liposarcoma have been met. 38 U.S.C. §§ 1101, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

10. The criteria for service connection for status post right nephrectomy as secondary to retroperitoneal liposarcoma have been met. 38 U.S.C. §§ 1101, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

11. The criteria for service connection for an acquired psychiatric disability manifested by panic attacks/anxiety (claimed as mental health) as secondary to retroperitoneal liposarcoma and/or T-cell lymphoma have not been met. 38 U.S.C. §§ 1101, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from July 1976 to July 1979.

This appeal is before the Board of Veterans' Appeals (Board) from a September 2019 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO); therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies. See 38 C.F.R. § 3.2400(a)(1). In August 2019, the Veteran submitted a Supplemental Claim and requested readjudication of the issues most recently addressed in a May 2019 rating decision. In September 2019, the agency of original jurisdiction (AOJ) issued the supplemental claim decision on appeal, which found that new and relevant evidence had not been received. In her September 2020 notice of disagreement, the Veteran elected the Evidence Submission docket. Therefore, the Board must determine whether new and relevant evidence has been received based only on the evidence of record at the time of the decision on appeal, as well as any evidence submitted by the Veteran or her representative with, or within 90 days from receipt of, the notice of disagreement. 38 C.F.R. § 20.303.

New and Relevant Evidence

VA will readjudicate a claim if new and relevant evidenced is presented or secured. 38 C.F.R. § 3.156(d). "New evidence" is defined as evidence not previously part of the actual record before agency adjudicators. "Relevant evidence" is evidence that tends to prove or disprove a matter in issue. 38 C.F.R. § 3.2501(a)(1).

1. Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for T-cell lymphoma

2. Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for retroperitoneal liposarcoma

3. Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for an abdominal scar as secondary to retroperitoneal liposarcoma

4. Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for femoral nerve damage of the right leg as secondary to retroperitoneal liposarcoma

5. Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for oral radiation burns as secondary to T-cell lymphoma and/or retroperitoneal liposarcoma

6. Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for partial diaphragm removal as secondary to retroperitoneal liposarcoma

7. Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for status post right colectomy with reanastomosis as secondary to retroperitoneal liposarcoma

8. Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for status post right nephrectomy as secondary to retroperitoneal liposarcoma

9. Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for panic attacks/anxiety (claimed as mental health) as secondary to T-cell lymphoma and/or retroperitoneal liposarcoma

The Veteran claims service connection for the above disabilities based on exposure to herbicide agents. 

As discussed above, prior to the September 2019 decision on appeal, the Veteran's service connection claims were denied in a May 2019 rating decision. The Board finds that the November 2020 submission by the Veteran's representative, including numerous reports regarding the presence of herbicides at Fort McClellan and an expert opinion by a horticulturist, constitutes new and relevant evidence to reopen claims of service connection for T-cell lymphoma and retroperitoneal liposarcoma. These reports were not in the record before, and each are relevant to whether the Veteran was exposed to herbicide agents. VA recognizes a relationship between exposure to herbicide agents and the development of liposarcoma and non-Hodgkin's lymphomas. See 38 C.F.R. § 3.309(e). As the remaining claims seek service connection secondary to liposarcoma or lymphoma, this evidence is relevant to those issues as well. For these reasons, the Board finds that new and relevant evidence has been received, and the issues of entitlement to service connection for T-cell lymphoma, retroperitoneal liposarcoma, and any secondary disabilities will be adjudicated on the merits.

10. Whether new and relevant evidence has been received to readjudicate the claim of entitlement to a TDIU

The Veteran seeks a TDIU. She contends that her service-connected disabilities, when considered in combination, render her unemployable.

Total disability means that there is present any impairment of mind or body sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. §§ 3.340, 4.15. Even a veteran less than 100 percent disabled is deemed totally disabled under the Schedule for Rating Disabilities if the veteran satisfies two requirements. 38 C.F.R. § 4.16(a). First, the veteran must meet a minimum percent evaluation. Second, the veteran must be found to be unable to secure and follow a substantially gainful occupation as a result of a service-connected disability or disabilities. Id. A veteran who does not meet the percentage evaluation requirements under 4.16(a) may be deemed totally disabled on an extraschedular basis under 38 C.F.R. § 4.16(b) when the evidence nonetheless indicates that the veteran is unemployable by reason of service-connected disabilities.

Favorable findings in the May 2019 and September 2019 rating decisions include a finding that the Veteran is unemployed.

No new and relevant evidence has been submitted that directly goes to the Veteran's employability. Moreover, the issue of entitlement to a TDIU is at its heart an appeal for an increased rating. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Until the Veteran is assigned a rating for the disabilities for which service connection is herein granted, there is no current rating to increase. In the legacy appeal system, the Board would remand this issue as inextricably intertwined with the grants of service connection. Such a remand is not permitted under the modernized system. Rather, once ratings have been assigned, the Veteran is free to disagree with them and request a TDIU as part of her initial appeal of any assigned ratings. For these reasons, the Board finds that new evidence relevant to entitlement to a TDIU has not been received, and readjudication of this issue is therefore not warranted.

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995). Service connection may also be granted for any disease diagnosed after discharge when the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection is also warranted for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Such secondary service connection is warranted for any increase in severity of a nonservice-connected disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(b).

For certain diseases with a relationship to herbicide agent exposure, such as liposarcoma and non-Hodgkin's lymphoma, a presumption of service connection arises if the disease manifests to a degree of 10 percent or more following service in the Republic of Vietnam any time during the period from January 9, 1962 to May 7, 1975. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307, 3.309(e). Absent a presumption based on service in Vietnam, a claimant may establish service connection on a direct basis if the evidence shows that a current disability was, in fact, caused by exposure to Agent Orange or some other incident of service. See Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant. 

11. Entitlement to service connection for retroperitoneal liposarcoma

12. Entitlement to service connection for T-cell lymphoma

The Veteran claims service connection for retroperitoneal liposarcoma, which was diagnosed in approximately 2008, and lymphoma, which was diagnosed in late 2017.

Favorable findings identified in the May 2019 and September 2019 rating decisions consist of current disabilities related to T-cell lymphoma and retroperitoneal liposarcoma, service at Fort McClellan from July 1976 to December 1976, and a favorable nexus in that these disabilities have been presumptively associated with exposure to herbicide agents and the Veteran's physician has opined that they are at least as likely as not related to exposure to herbicide agents. These findings are binding upon the Board's decision. As there is no evidence in the record of any alternative theory of service connection, the issue to be decided by the Board is whether the Veteran was exposed to herbicide agents during her service at Fort McClellan.

Presumptive exposure to herbicide agents is not available to the Veteran. The regulations that govern presumptive exposure are explicitly limited to service during the Vietnam era, prior to May 1975, with certain other narrow exceptions. As the Veteran did not serve during the Vietnam era, she must provide affirmative evidence of exposure to herbicide agents at Fort McClellan comparable to the exposure experienced by a Vietnam veteran. If exposure is established, however, a presumptive relationship to the claimed disabilities is warranted. See 38 C.F.R. §§ 3.307(a)(6), 3.309(e).

In an April 2018 letter, the Veteran's private oncologist (Dr. S.D'A.) attributed the Veteran's cancers to the reported 122,000 gallons of toxic commercial herbicides containing (TCDD) dioxin that were used for base maintenance at Fort McClellan from 1974 to 1976. Dr. S.D'A. noted that "there is no known cause for [the Veteran's] liposarcoma", it is her medical opinion that it is at least as likely as not that the Veteran was exposed to commercial herbicides contaminated with TCDD dioxin that made her ill during her training in 1976, and that it is least as likely as not that her exposure to TCDD in service is the cause of her liposarcoma because it is a known carcinogen. 

In a June 2018 letter, another of the Veteran's private oncologists (Dr. T.E.) stated that the Veteran has "two strange and unrelated malignancies" and it is his opinion that it is "highly likely that both of these malignances are related to exposure to Dioxin" in service, as the Veteran had no other risk factor known to him that may have precipitated these malignancies.

In February 2019, the Veteran submitted excerpts from a January 1998 Environmental Baseline Survey of Fort McClellan prepared for the United States Army Environmental Center. The survey noted that a variety of pesticides, including herbicides, were applied by licensed users at the golf course, roads and grounds department, and pest management at Fort McClellan. The appendix states that 4800 gallons of 2,4-D was used in 1976. In addition, during the same year Fort McClellan used 41,460 gallons of Silvex, or 2,4,5-T. The submission shows that use of Silvex, which was a component of Agent Orange, was suspended by the Environmental Protection Agency (EPA) in 1979.

In a statement associated with her February 2019 claim, the Veteran reported that within the first two weeks of her service at Fort McClellan she began to feel poorly, exhibiting fatigue and dizziness when in the training areas. She stated that by the third week she experienced chest pain, nausea, and shortness of breath when exerting herself. She contends that she lost consciousness during the fourth week and was subsequently diagnosed with pneumonia and left lung perforation. She attributes these symptoms to exposure to herbicide agents, and as such her subsequent cancers. She stated that while training, she would often see a green work truck with a large metal canister on the back driving away just as she arrived. She stated that her company ran past this truck the day she lost consciousness; it stopped spraying as they ran past. She described an incident in which she was marched across a marsh that was clear and had no algae, moss, frogs, or insects. She assumed that this area had been sprayed with pesticide and herbicide.

The Veteran arrived at Fort McClellan on July 27, 1976. Her service treatment records (STRs) generally support her above-noted contentions as to her symptoms. They reflect that beginning on August 10, 1976 (two weeks after her arrival at Fort McClellan), she had an assessment of an upper respiratory infection (for which she was treated with Penicillin), she reported that she felt tired and had shortness of breath and wheezing, she was tested for mononucleosis (which was negative), she had an assessment of possible bronchitis, she was at a bus stop when she felt faint, and she was eventually hospitalized for right lower lobe pneumonia from approximately August 25, 1976 to September 7, 1976. A subsequent September 28, 1976 STR notes that she complained of chest pain. A November 1976 STR reflects that she reported feeling feverish, and having throat problems, body soreness, and a congested cough for one day.

In November 2020, the Veteran's representative submitted an extensive brief arguing that the Veteran was exposed to herbicide agents while serving at Fort McClellan in 1976. Included with this brief was an October 2018 report by Dr. Hannah Mathers, a former professor of horticulture at the Ohio State University, in which she opined that it was more likely than not and in fact was to a reasonable degree of certainty that those serving and/or living at Fort McClellan from 1974 to 1976 were exposed to the herbicide agents used in Vietnam and identified in 38 C.F.R. § 3.307(a)(6)(i). She stated that those serving at Fort McClellan more likely received a greater exposure to the contaminant TCDD than those serving in Vietnam, more so if they underwent outdoor training. This opinion was based on the reports of the amounts of commercial herbicides used at Fort McClellan from 1974 to 1976 versus the tactical herbicides used in Vietnam over a 10-year period, adjusted for land area. Dr. Mathers explained that the commercial herbicides, since banned by the EPA, had the same active ingredients identified in the herbicide agent regulations, and in some cases were chemically indistinguishable from the agents used in Vietnam. 

The claims file includes evidence that the risk factors for soft tissue sarcoma (e.g., liposarcoma) include previous radiation therapy, certain genetic conditions, exposure to insecticides, herbicides, and vinyl chlorides, and having lymphedema. Importantly, the evidence does not reflect that prior to her diagnosis, the Veteran had any of these risk factors, other than her claimed exposures in service. 

The Board finds that the evidence is at least in equipoise as to whether the Veteran's T-cell lymphoma and retroperitoneal liposarcoma are related to exposure to herbicide agents at Fort McClellan. Dr. Mathers' report contains a detailed and convincing opinion based on evidence of the amounts of commercial herbicides used at Fort McClellan from 1974 to 1976. Moreover, these commercial herbicides meet the definition for presumptive service connection in 38 C.F.R. § 3.307(a)(6)(i) ("2,4-D; 2,4,5-T and its contaminant TCDD; cacodylic acid; and picloram"). Dr. Mathers' opinion is corroborated by statements by the Veteran that she believes she witnessed trucks which sprayed herbicides/pesticides while in service. If VA determines that the Veteran was exposed to herbicide agents, both non-Hodgkin's lymphoma and liposarcoma are presumptively related to such exposure. See 38 C.F.R. § 3.309(e). 

In sum, the Veteran has stated that while at Fort McClellan, she witnessed trucks spraying the rifle range before she used it, she began feeling ill with a few weeks of service at Ft. McClellan and was diagnosed with pneumonia of the right lower lobe with the organism unknown, she has been diagnosed with two uncommon malignancies, her only known risk factor is herbicide exposure, two doctors have opined that her disabilities are at least as likely as not related to herbicide exposure, and a former professor of horticulture has opined that it was more likely than not and in fact was to a reasonable degree of certainty that those serving and/or living at Fort McClellan from 1974 to 1976 were exposed to the herbicide agents used in Vietnam and identified in 38 C.F.R. § 3.307(a)(6)(i). 

For these reasons, the Board finds that the evidence is at least in equipoise as to whether the Veteran's T-cell lymphoma and retroperitoneal liposarcoma are related to exposure to herbicide agents at Fort McClellan, and service connection is therefore granted.

13. Entitlement to service connection for an abdominal scar as secondary to retroperitoneal liposarcoma

The Veteran claims service connection for abdominal scarring due to retroperitoneal liposarcoma. Favorable findings in the May 2019 and September 2019 rating decisions consist of a current disability, specifically that private treatment records in April 2009 reflected surgical scarring related to the Veteran's liposarcoma. These findings are binding on the Board. As the Board herein grants service connection for retroperitoneal liposarcoma, the evidence now weighs in favor of a finding that an abdominal scar is related to a service-connected disability, and service connection is therefore granted.

14. Entitlement to service connection for femoral nerve damage of the right leg as secondary to retroperitoneal liposarcoma

The Veteran claims service connection for femoral nerve damage in the right leg due to retroperitoneal liposarcoma. Favorable findings in the May 2019 and September 2019 rating decisions consist of a current disability, specifically that private treatment records in October 2008 reflected surgical removal of the genitofemoral nerve as part of the treatment of the Veteran's liposarcoma. These findings are binding on the Board. As the Board herein grants service connection for retroperitoneal liposarcoma, the evidence now weighs in favor of a finding that femoral nerve damage of the right leg is related to a service-connected disability, and service connection is therefore granted.

15. Entitlement to service connection for oral radiation burns as secondary to T-cell lymphoma and/or retroperitoneal liposarcoma

The Veteran claims service connection for oral radiation burns due to T-cell lymphoma and/or retroperitoneal liposarcoma. Favorable findings in the May 2019 and September 2019 rating decisions consist of a current disability, specifically that private treatment records in April 2018 reflected radiation treatment of the hard palate for T-cell lymphoma. These findings are binding on the Board. As the Board herein grants service connection for T-cell lymphoma, the evidence now weighs in favor of a finding that oral radiation burns are related to a service-connected disability, and service connection is therefore granted.

16. Entitlement to service connection for partial diaphragm removal as secondary to retroperitoneal liposarcoma

The Veteran claims service connection for partial diaphragm removal due to retroperitoneal liposarcoma. Favorable findings in the May 2019 and September 2019 rating decisions consist of a current disability, specifically that private treatment records reflected partial removal of the right diaphragm during surgery for the Veteran's liposarcoma in October 2008. These findings are binding on the Board. As the Board herein grants service connection for retroperitoneal liposarcoma, the evidence now weighs in favor of a finding that partial diaphragm removal is related to a service-connected disability, and service connection is therefore granted.

17. Entitlement to service connection for status post right colectomy with reanastomosis as secondary to retroperitoneal liposarcoma

The Veteran claims service connection for right colectomy residuals with reanastomosis due to retroperitoneal liposarcoma. Favorable findings in the May 2019 and September 2019 rating decisions consist of a current disability, specifically that private treatment records in October 2008 reflected colectomy and reanastomosis related to the Veteran's liposarcoma. These findings are binding on the Board. As the Board herein grants service connection for retroperitoneal liposarcoma, the evidence now weighs in favor of a finding that status post right colectomy with reanastomosis is related to a service-connected disability, and service connection is therefore granted.

18. Entitlement to service connection for status post right nephrectomy as secondary to retroperitoneal liposarcoma

The Veteran claims service connection for right nephrectomy residuals due to retroperitoneal liposarcoma. Favorable findings in the May 2019 and September 2019 rating decisions consist of a current disability, specifically that private treatment records reflected a right nephrectomy due to the Veteran's liposarcoma in October 2008. These findings are binding on the Board. As the Board herein grants service connection for retroperitoneal liposarcoma, the evidence now weighs in favor of a finding that status post right nephrectomy is related to a service-connected disability, and service connection is therefore granted.

19. Entitlement to service connection for panic attacks/anxiety (claimed as mental health) as secondary to retroperitoneal liposarcoma and/or T-cell lymphoma

The Veteran claims service connection for a mental health disability due to her retroperitoneal liposarcoma and/or T-cell lymphoma. Favorable findings in the May 2019 and September 2019 rating decisions consist of findings of a current disability, specifically treatment for panic and anxiety evident in June 2018 private treatment records. These findings are binding on the Board.

STRs do not reflect any symptoms of or treatment for any mental health disability.

Private treatment records reflect that in June 2018 the Veteran presented to the emergency room reporting general malaise with associated intermittent fatigue, difficulty walking, nausea, abdominal pain, dizziness, blurred vision, urinary urgency, and decreased oral intake. She noted that she had completed radiation treatment for lymphoma in April. She was diagnosed with tremors of the nervous system and a panic attack.

The Board finds that VA met its duty to assist at the time of the September 2019 rating decision. VA has a duty to provide a medical examination where there is (1) competent evidence of a current disability or symptoms thereof; (2) evidence establishing that an event, injury, or disease occurred in service; (3) an indication that the disability is associated with service; and (4) insufficient competent medical evidence to decide the claim. McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006); see 38 U.S.C. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4)(i). The evidence before VA in September 2019 did not establish service connection for lymphoma or liposarcoma, and as such the evidence weighed against a finding of an event, injury, or disease on which service connection could be based. As VA was under no duty to provide an examination based on the available evidence in September 2019, remand for an examination is not necessary. 

The Board finds that the evidence weighs against a finding that the Veteran has a current acquired psychiatric (mental health) disability which is related to a service-connected disability or is otherwise related to service. While she reported her recent cancer treatment prior to being diagnosed with a panic attack, at the time her physicians were ruling out physical differential diagnoses for her panic attack symptoms. There is no medical evidence to indicate that her panic attack was caused by, or aggravated by, a service-connected disability. The only evidence of such a relationship is the Veteran's claim itself, but she is not competent to determine the cause of her panic attack. This determination is beyond her lay competence. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011); Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). See also King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012) (indicating lay evidence must demonstrate some competence and affirming the Court's conclusion that the Board did not improperly discount the weight of a lay opinion in finding a medical expert's opinion more probative on the issue of medical causation). Indeed, when she presented to the emergency room, her records suggest that she was not even aware that her symptoms were due to a panic attack, let alone what might be its cause. 

In essence, she had a panic attack, but there is not probative evidence that she has had a disability diagnosed under the DSM-5 (Diagnostic and Statistical Manual of Mental Disorders) which is as likely as not causally related to, or aggravated by, a service-connected disability. 

Finally, there is no evidence in the record indicating a direct relationship between her mental health symptoms and service. 

For these reasons, the Board finds that the evidence weighs against a finding that the Veteran has a mental health disability which warrants service connection. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990). 

 

T. WISHARD

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board J. Gallagher, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.