Citation Nr: AXXXXXXXX
Decision Date: 09/30/21 Archive Date: 09/30/21

DOCKET NO. 200518-85372
DATE: September 30, 2021

ORDER

Entitlement to service connection for a mental disorder is denied.

Entitlement to service connection for diabetes mellitus is denied. 

Entitlement to service connection for a skin disorder is denied.

Entitlement to service connection for a heart disorder is denied. 

REMANDED

Entitlement to service connection for hypertension is remanded.

FINDINGS OF FACT

1. A mental disorder is not related to service.

2. Diabetes mellitus is not related to service.

3. A skin disorder is not related to service.

4. A heart disorder is not related to service.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a mental disorder are not met. 38 U.S.C. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303.

2. The criteria for entitlement to service connection for diabetes mellitus are not met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1116, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309.

3. The criteria for entitlement to service connection for a skin disorder are not met. 38 U.S.C. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303.

4. The criteria for entitlement to service connection for a heart disorder are not met. 38 U.S.C. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1967 to September 1970

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with Department of Veterans Affairs (VA) decisions on their claim to seek review. This decision has been written consistent with the AMA framework as the rating decision on the issue on appeal was issued after the implementation of the new law went into effect. 

This appeal comes before the Board of Veterans' Appeals (Board) from a March 2020 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). The Veteran selected the Direct Review lane; therefore, the Board may only consider evidence of record at the time of the March 2020 decision.

Service ConnectionLaw and Regulations

VA law provides that, for disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, or other than a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation, except if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs. 38 U.S.C. §§ 1110, 1131. 

For specific enumerated diseases designated as "chronic" there is a presumption that such chronic disease was incurred in or aggravated by service even though there is no evidence of such chronic disease during the period of service. In order for the presumption to attach, the disease must have become manifest to a degree of 10 percent or more within one year of separation from active duty. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). Presumptive service connection for the specified chronic diseases may alternatively be established by way of continuity of symptomatology under 38 C.F.R. § 3.303(b). However, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic in 38 C.F.R. § 3.309(a) Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

VA has established a presumption of exposure to herbicide agents applicable to veterans who served in the Republic of Vietnam during the Vietnam War, and a presumption of service connection applicable to veterans who are either presumed to have been exposed to herbicide agents, or who are shown to have been actually exposed to herbicide agents during service. 

A veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. The last date on which such a veteran shall be presumed to have been exposed to an herbicide agent shall be the last date on which he or she served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975. 38 C.F.R. § 3.307(a)(6)(iii).

A disease covered by 38 U.S.C. § 1116 becoming manifest as specified in that section in a veteran who, during active military, naval, or air service, served offshore of the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of evidence of such disease during the period of such service. 38 U.S.C. § 1116(a). A veteran who, during active military, naval, or air service, served offshore of the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. 38 U.S.C. § 1116(b); 38 U.S.C. § 1116A (those who served in the 12-nautical-mile territorial sea of the "Republic of Vietnam" are entitled to the presumption of herbicide exposure). 

If a veteran was exposed to an herbicide agent during active military, naval, or air service, the following diseases shall be service-connected if the requirements of § 3.307(a)(6) are met even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of § 3.307(d) are also satisfied. AL amyloidosis, chloracne or other acneform disease consistent with chloracne, type 2 diabetes (also known as Type II diabetes mellitus or adult-onset diabetes), Hodgkin's disease, ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina), all chronic B-cell leukemias (including, but not limited to, hairy-cell leukemia and chronic lymphocytic leukemia), multiple myeloma, non-Hodgkin's lymphoma, Parkinson's disease, early-onset peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), soft-tissue sarcoma (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309(e).

The term "soft-tissue sarcoma" includes the following: adult fibrosarcoma, dermatofibrosarcoma protuberans, malignant fibrous histiocytoma, liposarcoma, leiomyosarcoma, epithelioid leiomyosarcoma (malignant leiomyoblastoma), rhabdomyosarcoma, ectomesenchymoma, angiosarcoma (hemangiosarcoma and lymphangiosarcoma), proliferating (systemic) angioendotheliomatosis, malignant glomus tumor, malignant hemangiopericytoma, synovial sarcoma (malignant synovioma), malignant giant cell tumor of tendon sheath, malignant schwannoma, including malignant schwannoma with rhabdomyoblastic differentiation (malignant Triton tumor), glandular and epithelioid malignant schwannomas, malignant mesenchymoma, malignant granular cell tumor, alveolar soft part sarcoma, epithelioid sarcoma, clear-cell sarcoma of tendons and aponeuroses, extra-skeletal Ewing's sarcoma, congenital and infantile fibrosarcoma, malignant ganglioneuroma. 38 C.F.R. § 3.309(e), NOTE 1.

The term ischemic heart disease does not include hypertension or peripheral manifestations of arteriosclerosis such as peripheral vascular disease or stroke, or any other condition that does not qualify within the generally accepted medical definition of Ischemic heart disease. 38 C.F.R. § 3.309(e), NOTE 2.

The herbicide-presumptive diseases shall have become manifest to a degree of 10 percent or more at any time after service, except that chloracne or other acneform disease consistent with chloracne, porphyria cutanea tarda, and early-onset peripheral neuropathy shall have become manifest to a degree of 10 percent or more within a year after the last date on which the veteran was exposed to an herbicide agent during active military, naval, or air service. 38 C.F.R. § 3.307 (a)(6)(ii).

Generally, lay evidence is competent with regard to identification of a disease with unique and readily identifiable features which are capable of lay observation. See Barr v. Shinseki, 21 Vet. App. 303, 311 (2007). A lay person may speak to etiology in some limited circumstances in which nexus is obvious merely through observation, such as sustaining a fall leading to a broken leg. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir 2007). Lay persons may also provide competent evidence regarding a contemporaneous medical diagnosis or a description of symptoms in service which supports a later diagnosis by a medical professional. However, a lay person is not competent to provide evidence as to more complex medical questions, i.e., those which are not capable of lay observation. Lay statements are not competent evidence regarding diagnosis or etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever); Jandreau, at 1377, n. 4 ('sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer'); 38 C.F.R. § 3.159(a)(2).

After the evidence has been assembled, it is the Board's responsibility to evaluate the entire record. 38 U.S.C. § 7104(a). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3. A VA claimant need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the preponderance of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), Gilbert at 54.

Entitlement to service connection for a mental disorder.

Entitlement to service connection for diabetes mellitus.

Entitlement to service connection for a skin disorder.

Entitlement to service connection for a heart disorder.

The Veteran entered service in September 1967. He is acknowledged to have served in Vietnam and thus was exposed to herbicide agents. 

Service treatment records reveal no complaints, treatments, or diagnoses pertinent to heart disease, skin cancer, diabetes mellitus, or mental disease. A report of medical examination performed on June 22, 1970 (service separation), reveals normal findings for the heart, skin, endocrine system, and psychiatric. The physical profile ratings were "1" in every category, including categories covering the endocrine system, heart, and psychiatric function (Record 12/20/2019 at 5).

A report of medical history completed by the Veteran on the same day as the examination reveals that the Veteran denied any history of, or current, pain or pressure in chest, palpitation, or pounding heart (Record 12/20/2019 at 7). 

The Veteran was separated from active duty on September 4, 1970. He filed the current and initial service connection claim in November 2019, almost 50 years later. 

A review of the post-service records reveals that the Veteran has been diagnosed with atrial fibrillation (Record 01/27/2020). Regarding the skin, he has been diagnosed with lentigos, benign nevi, angioma, seborrheic keratosis, and actinic keratosis (Record 12/31/2019). He has a history of basal cell carcinoma. He has not been diagnosed with ischemic heart disease, diabetes mellitus, or mental disease of any kind. 

In August 2016, the Veteran was found to have intact judgment and insight. Thoughts were normal in rate; content was logical; and abstract reasoning was normal. Mood was normal and affect was appropriate (Record 02/19/2020 at 30). In March 2017, the Veteran denied any anxiety. His mood was normal, and his affect was appropriate (Record 02/19/2020 at 1). In September 2016 and January 2017, the Veteran denied any anxiety. His mood was normal, and his affect was appropriate (Record 02/12/2020 at 12, 23).

April 16, 2019, and May 29, 2019, clinical notes reveal the Veteran was negative for diabetes (Record 01/27/2020 at 17, 23).

In December 2019, the Veteran was treated for "Jock itch" (Record 02/12/2020 at 3).

A VA mental disorders examination in December 2019 reveals the Veteran reported that he has never had a psychological evaluation in his life; he denied any psychotherapy in the military; he denied taking any psychiatric medications in the military; he denied any inpatient psychiatric history in the military. No records were supplied showing any psychiatric treatment or diagnosis in the military, consistent with the Veteran's self-report. The Veteran reported that he has never had a psychological evaluation in his life. The Veteran reported, "My wife died in 1998. For a month or something, my family physician gave me something that was supposed to calm me down. Whatever that was." He stated that the doctor did not diagnose any type of mental disorder. He denied ever taking any other type of psychiatric medication at any time in his life. The Veteran denied any history of ever having any psychotherapy or any mental health counseling in his life. The Veteran said, "I was pretty happy till August." The Veteran said that in August 2019, he began having serious problems with atrial fibrillation and "flutter" in his heart and that he is having a hard time with his heart medication, which makes his stomach hurt and gives him diarrhea. He stated that since August, he has begun to experience times when he gets angry, which he attributed to the new heart problems. The Veteran stated that he has hypertension and that it began at age 19 while he was in service. The Veteran said that he is scheduled to undergo two different heart ablations in January 2020. The Veteran arrived on time for the appointment. He was dressed neatly and appropriately to season and situation. His grooming was neat. Hygiene was good. The Veteran was alert and well oriented. His affect was calm, euthymic, within normal limits, and flexible. He was always polite. He was always respectful. He was always highly sociable. He was pleasant and cooperative. He employed humor appropriately at times. He smiled and chuckled sometimes. The Veteran was easy to engage in casual conversation. There was no evidence of psychomotor retardation or agitation at any time. There were no tics or tremors noted. Speech was of normal rate, volume, content, and fluency during the evaluation. He maintained good eye contact, focus on questions asked, and attention and concentration throughout the evaluation. Information incidentally learned during the first part of the evaluation was recalled effectively by the Veteran much later in the in-person evaluation. There was no evidence of anomia or dysnomia. Gross judgement was intact. He demonstrated intact abstract thinking. His use of basic vocabulary was good. There was no evidence of delusional belief sets. There was no evidence of dangerousness. There was no evidence of responding to internal stimuli. There was no evidence of a formal thought disorder. The examiner determined that a diagnosis of PTSD was not warranted and that no mental disorder diagnosis was warranted (Record 12/31/2019). 

After a review of all of the evidence, the Board finds that the criteria for entitlement to service connection for a mental disorder, diabetes mellitus, a skin disorder, and/or a heart disorder are not met. 

The medical evidence in this case shows that the Veteran does not have PTSD or a mental disorder of any description. He also does not have diabetes mellitus. The Veteran has provided no competent diagnosis of either of these conditions, even though his claim specifies PTSD and diabetes. The Board acknowledges that the Veteran is not competent to provide a diagnosis that requires the application of medical expertise to the facts presented, which includes the claimant's description of history and symptomatology. Clemons v. Shinseki, 23 Vet. App. 1 (Vet. App. Feb 17, 2009). However, even applying the most liberal and the most general interpretation of these claims, there is simply no competent evidence to support the existence of a mental disorder or an endocrine disorder. Indeed, there is a VA mental examination which finds no mental disorder. As there is no current disability regarding diabetes mellitus, a VA examination and/or medical opinion is not necessary. 

Regarding the claim for heart disease, the only diagnosis is atrial fibrillation. By the Veteran's own account, this was not present until August 2019. This is not an herbicide related condition and it was not noted at any time in service. There is no medical opinion that purports to relate atrial fibrillation to service, and, as there was no injury or disease in service, a VA examination and/or medical opinion is not necessary. See McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006).

The Veteran has a diagnosis of basal cell carcinoma, as well as several other skin disorders. However, his skin was normal at service separation, and there is no medical opinion that purports to relate any of these disorders to service. Regarding exposure to herbicide agents, basal cell carcinoma is not among the herbicide presumptive diseases. Accordingly, there is no presumption of service connection on this basis. Entitlement to service connection for basal cell carcinoma must be related by a positive nexus opinion. No such opinion is of record. Moreover, as none of the diagnosed skin conditions are herbicide presumptive, the Board finds that there was no injury or disease in service. Accordingly, a VA examination and/or medical opinion is not necessary. 

The Board has considered the Veteran's lay statements regarding etiology. However, relating current skin disorders and atrial fibrillation to temporally remote events in service is not the equivalent of relating a broken bone to a concurrent injury to the same body part (Jandreau, at 1377). These issues are medically complex. Therefore, they are outside the competence of a layperson because the record does not show that he has the medical training or credentials to make such a determination. Such an opinion is not capable of lay observation. Accordingly, the Veteran's lay statements are unpersuasive as to an etiologic relationship between the claimed skin disorders and atrial fibrillation and service. See King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012). The same logic applies to providing a diagnosis of diabetes mellitus and a mental disorder. These require medical expertise. 

In sum, the Board finds that the claimed mental disorder, diabetes mellitus, skin disorder, and heart disorder are not related to service. In light of these findings of fact, the Board concludes that service connection for the claimed disorders is not warranted. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.

REASONS FOR REMAND

Entitlement to service connection for hypertension.

The Veteran is presumed to have been exposed to herbicide agents during service. He also has a diagnosis of hypertension. While Hypertension is not a disease listed under 38 C.F.R. § 3.309(e) for which a presumption applies for service connection based on exposure to herbicide agents. In November 2018, the National Academy of Sciences issued an update on Veterans and Agent Orange that moved hypertension from the limited or suggestive evidence category to the sufficient evidence of an association category. 

See https://www.nap.edu/resource/25137/111318_VAO_2018_highlights.pdf. 

In Healey v. McDonough, 33 Vet. App. 312 (2021), the United States Court of Appeals for Veterans Claims (Veterans Court) found that VA has concluded, based on the NAS guidance that there is "limited or suggestive evidence" of a relationship between hypertension and Agent Orange, as evidenced by its inclusion of this information in internal procedural manuals. See also Euzebio v. McDonough, 989 F.3d 1305 (2021). 

Given the 2018 update, there is an indication that the Veteran's diagnosed hypertension may be associated with his exposure to herbicide agents, thus triggering VA's duty to obtain a medical examination. See McLendon v. Nicholson, 20 Vet. App. 79, 84 (2006). The Veteran was not provided a VA examination/opinion regarding the etiology of hypertension. This constitutes a pre-decisional duty to assist error.

The matter is accordingly REMANDED for the following action:

Schedule an appropriate VA examination to determine the nature and etiology of his hypertension. The relevant documents in the claims file should be made available to the VA examiner. All indicated tests and studies should be accomplished.

The VA examiner is requested to offer an opinion as to whether it is at least as likely as not (i.e., to at least a 50-50 degree of probability) that the claimed hypertension is causally or etiologically related to the Veteran's active service, to include exposure to herbicide agents therein.

Note: The term "at least as likely as not" does not mean merely within the realm of medical possibility, but that the medical evidence for and against a conclusion is so evenly divided that it is as medically sound to find in favor of causation or worsening as it is to find against causation or worsening.

All opinions are to be accompanied by a rationale consistent with the evidence of record. A discussion of the pertinent evidence, relevant medical treatises, and generally accepted medical principles is requested. If the examiner cannot provide an opinion without resorting to speculation, the examiner is asked to please provide complete explanations stating why this is so. In so doing, the examiner is asked to explain whether any inability to provide a more definitive opinion is the result of a need for additional information, or that the examiner has exhausted the limits of current medical knowledge in providing an answer to that particular question.

 

JONATHAN B. KRAMER

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board L. Cramp

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.